**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **ENTRI LLC,** 209 Cornwall St. NW Leesburg, VA 20176-2702 **Plaintiff,** **v.** **GODADDY.COM, LLC,** 14455 N. Hayden Rd. Scottsdale, AZ, 85260 Serve on: Corporation Service Company 100 Shockoe Slip, Fl. 2 Richmond, VA 23219-4100 **Defendant.** | Civil Action No. |

## COMPLAINT

Plaintiff Entri LLC ("Entri"), by and through counsel, states as follows for its

Complaint against Defendant GoDaddy.com, LLC ("GoDaddy"):

### INTRODUCTION AND NATURE OF ACTION

1.      This is an action for declaratory relief under the Declaratory Judgment Act, 28

U.S.C. § 2201 and 2202, and for injunctive relief. Entri seeks a declaration from the Court that it

is not violating federal or state law by accessing website domains for which GoDaddy is the

custodian. It, furthermore, seeks injunctive relief to ensure that GoDaddy cannot restrict Entri's

access to website domains, which are owned by the businesses and individuals who purchased

those domains.

2.      Almost every small business needs a website. And there are millions of small businesses around the country. Whether you're a bakery, a restaurant, or a flower delivery service, you need a way for your customers to buy your products and services. But most people who start a small business specialize in something *other* than setting up a website.

3.      The technical process of setting up the configuration of an internet domain is difficult.

4.      This is where Entri provides its value. Entri helps small businesses handle the complex process of setting up the technical Domain Name Settings ("DNS") of websites, which most small business owners are unable to do due to their lack of technical knowledge.

5.      Entri's largest customers are software companies that help small businesses set up their websites.  These companies use Entri for customer onboarding to ensure a seamless domain setup process for their small business customers. Entri has created a successful business by automating that process with a simple, 3-click, accessible, and cost-effective business solution.

6.      GoDaddy is by far the largest domain registrar in the world. Small businesses looking to set up a website must buy a domain through a domain registrar such as GoDaddy.

7.      GoDaddy does not have a property interest in the domain names for which it serves as a custodian. Rather, the domain names belong to the business or individual who purchased them.

8.      From April 2022 to January 2024, the parties to this dispute, GoDaddy and Entri, worked together in a business relationship to make the process of setting up domains easier for which GoDaddy is the custodian.

9.      In late 2023 and early 2024, GoDaddy decided that it wanted to monetize Entri's business model in lieu of continuing their collaborative relationship with Entri.

10.     At first, GoDaddy sought to have Entri pay a "license fee" to access GoDaddy domains, even though the domain names registered on GoDaddy's site are not GoDaddy's intellectual property.

11.     In late 2023 and in early 2024, however, GoDaddy decided to sever its relationship with Entri and force Entri's customers to pay GoDaddy directly.

12.     Upon information and belief, GoDaddy, in early 2024, engaged in a broad-scale campaign to poach Entri's customers.

13.     Upon information and belief, this campaign was largely unsuccessful. Entri's customers have chosen to work with Entri instead of GoDaddy in configuring their domains.

14.     When normal sales channels failed, GoDaddy sought to exclude Entri from the market altogether by using scare tactics, coercion, and legal threats to steal Entri's customers.

15.     In early 2024, multiple clients contacted Entri to notify them that GoDaddy had made threats related to Entri's business and the prospect of continuing to work with Entri. That is where we find ourselves.

16.     In early 2024, one of Entri's customers told it in a recorded Zoom call that:

"[t]ransparently, [GoDaddy] had like kind of like scare tactic meeting where they got [] aggressive with us… The tone of the meeting was so negative that it like left us scarred… it was just like so unpersonable [sic] and so mean, to the point where we were like, we didn't do anything, um so anyways, we just wanted to circle back with you all. I don't know if you're hearing this from others. I'm imagining you are, based on the tone of their conversation, it clearly sounds like they're trying to monetize something that they haven't monetized before, and they're trying to claw back as much of the [] revenue as they can, but [] we've enjoyed working with you all, and we really like your product, so, like, we're hoping to continue to use it, but also, in the middle of our day to day, kind of being pulled aside and being scolded, we're a little bit taken aback…

17.     On March 7, 2024, GoDaddy sent Entri a "pre-litigation demand" alleging, among other things, that Entri was violating the Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.* ("CFAA") by configuring the domain names according to the preferences of its customers.

## PARTIES

18.     Entri is a Virginia limited liability company with its principal place of business in Loudoun County, Virginia. Entri has four members who reside in Virginia, New York and California.

19.     GoDaddy is a limited liability company with its principal place of business in Maricopa County, Arizona.   Upon information and belief, GoDaddy does not have members who reside in Virginia, New York, or California.

20.     Upon information and belief, GoDaddy is the largest domain registrar in the world. There are almost 63 million domain names registered on its primary platform, and, according to GoDaddy's most recent public filing, there are more than 85 million domain names under its management across all platforms owned and operated by GoDaddy. https://s23.q4cdn.com/406380394/files/doc_presentations/2024/March/2024_Inv-Day_FINAL.pdf.  This is about five times as many domains as its next closest competitor.

## JURISDICTION AND VENUE

21.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties.

22.     Additionally, this Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.   Additionally, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Entri's claims under state law as they share a common nucleus of operative fact with the claims for which this Court has federal question jurisdiction.

23.     Venue is proper in this district under 28 U.S.C. § 1391 because the claims asserted in this action arose in this district and a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

**A.  Entri and GoDaddy's Relationship.**

24.     In September 2021, Entri first started supporting domains for which GoDaddy is the custodian.

25.     On April 8, 2022, Entri and GoDaddy signed an Open-Source Domain Connect Agreement ("Domain Connect"). Domain Connect is an open-source protocol—originally designed in part by GoDaddy engineers—that various DNS providers adopt to help simplify the DNS setup process.

26.     From April of 2022 to August of 2023, GoDaddy and Entri were business partners that worked together to make the process of configuring DNS for GoDaddy users as simple and cost-effective as possible.

27.     While the parties' April 8, 2022, agreement had a term of one year, they continued to work together after the agreement's expiration. Since neither party terminated the agreement, it remained in effect by virtue of the acceptance of performance.

28.     On hundreds of occasions after April 8, 2023, Entri worked directly with Robert Philip and other GoDaddy representatives to assist new customers with the onboarding process, consistent with the terms of their prior agreement.

29.     In July 2023, Entri's use of the Domain Connect protocol with GoDaddy accelerated to such a degree that GoDaddy—not Entri—requested that the parties create a shared Slack channel to streamline communications. On July 11, 2023, the parties signed a Non-Disclosure Agreement ("NDA") in furtherance of this relationship.

30.     A true and accurate copy of the NDA is attached hereto as **Exhibit 1**.

31.     After executing the NDA, GoDaddy and Entri's technical teams collaborated to enable easy domain setup for new customers.

32.     In August 2023, GoDaddy representative Robert Philip communicated to Entri in their shared Slack channel that "[a]ll DomainConnect [sic] asks are currently on hold. Resources are at a premium and the DNS team is extremely busy. You may post your requests in here, but we will not act on them at this time."

33.     In response, Entri proposed multiple technical solutions to eliminate or significantly reduce any burden on GoDaddy staff and personnel, including a Universal Template application solution, which other Entri domain partners had successfully adopted to minimize operational burden.  These efforts were rebuffed or ignored by GoDaddy.

34.     On August 28, 2023, GoDaddy introduced Entri to Carissa Pompei, the GoDaddy Director of Business Development. On August 31, Ms. Pompei proposed that, going forward, Entri would have to pay a "license fee" of some sort to continue to use Domain Connect.

35.     In the spirit of partnership, Entri acquiesced to this demand. Over the next two months, the parties negotiated a revised proposed business arrangement.  In so doing, Entri requested numerous times in writing that GoDaddy honor its prior contract with Entri.  GoDaddy refused the requests.

36.     On October 16, 2023, the parties agreed to the terms of a deal over email.  GoDaddy representative Robert Philip acknowledged in writing that the key terms to the deal were agreed upon and that GoDaddy had not been honoring the prior agreement with Entri. Specifically, he wrote: "It appears that we are closing in on a revised agreement between GoDaddy and Entri.  In

preparation of that amendment, let's start to put together a list of asks from Entrii [sic] over the past downtime."

37.     But even after Entri made these accommodations and other concessions to GoDaddy, GoDaddy asked Entri to sign a contract that did not reflect the terms that were mutually agreed upon via email.

38.     In November 2023, GoDaddy, without explanation, stepped away from negotiations.

39.     Entri made multiple attempts to convince GoDaddy to re-enter negotiations, but they were all ignored.

40.     Upon information and belief, in December 2023, while still having an active agreement with Entri, GoDaddy started notifying Entri's customers that they needed to pay GoDaddy a fee to use the Domain Connect service.

41.     On January 11, 2024, GoDaddy provided notice that it was terminating its April 2022 agreement with Entri, effective immediately. The agreement had a 60-day termination notice requirement for each party. The notice informed Entri that it no longer had access to Domain Connect.

42.     GoDaddy immediately ceased to support Entri's Domain Connect integration with GoDaddy, causing an interruption to Entri's business.

43.     After receipt of the January 11th notice, Entri stopped using Domain Connect, and has not used Domain Connect since that time. Instead, Entri returned to using its same business processes it had used prior to April 8, 2022, to service domains for which GoDaddy is the custodian.

44.     Over the next 45 days, GoDaddy solicited the business of at least a half a dozen Entri customers that it knew had an ongoing contractual and business relationships with Entri.

These customers include, without limitation, ████████████████████

████████████████████

45.     GoDaddy also improperly solicited the business of Entri's known business prospects. These prospective customers include, without limitation, ████████████

46.     Multiple clients contacted Entri to notify them that GoDaddy had solicited their business and made threats related to Entri's business and the prospect of continuing to work with Entri.

47.     On March 7, 2024, GoDaddy sent Entri a "pre-litigation demand" for Entri to "immediately cease and desist from its unauthorized efforts to utilize the GoDaddy Domain Connect web-based flow and API." The letter further alleged, among other things, "[i]mproper and unlicensed use of the GoDaddy API and GoDaddy's intellectual property in support of Entri's commercial activities in violation of GoDaddy's API Terms of Use ("API TOU"), Sections 32 and 43(a) of the Lanham Act, the Computer Fraud and Abuse Act, codified at 18 U.S.C. §1030 (the "Computer Fraud and Abuse Act"), and GoDaddy's common law rights."  A copy of the March 7 letter is attached as **Exhibit 2**.

<u>**Servers and Technological Process**</u>

48.     Entri uses its users' valid login credentials, with their permission, to access domains **<u>owned</u>** by those users for the purpose of updating domain configuration settings according to their preferences.

49.     To do this, one must access computers, but the computers that need to be accessed do not belong to GoDaddy.

50.     The computers that any person must access when updating DNS configuration preferences are a called "computer servers."

51.     The relevant point of access for any party that seeks to update its DNS on GoDaddy is account.godaddy.com/sso.godaddy.com.

52.     Upon information and belief, this portal uses Akamai computers for the Content Delivery Network ("CDN").

53.     Upon information and belief, GoDaddy uses Amazon Web Services for its cloud computing associated with the log-in portal. *See* https://aws.amazon.com/blogs/mt/godaddys-journey-to-the-cloud-and-their-standard-cloud-platform/ + https://techcrunch.com/2018/03/28/godaddy-to-move-most-of-its-infrastructure-to-aws-not-including-domain-management-for-its-75m-domains/

54.     If Entri did not exist, the small business customer setting up their domain on GoDaddy would be required to follow the exact same technological process to achieve the exact same result.

55.     Entri's support of GoDaddy customer domains does not impose any additional burden on GoDaddy's technological systems.

56.     Furthermore, GoDaddy also has a formal process whereby a customer whose domains are hosted with GoDaddy can delegate the function of setting up a domain to a third party. https://www.godaddy.com/help/invite-a-delegate-to-access-my-godaddy-account-12376.     As a matter of principal, therefore, GoDaddy has no objection to the service Entri provides its customers. Rather, GoDaddy's antagonism towards Entri is due solely to Entri's competitiveness.

57.     Entri is not causing any technological harm to anyone's "computer data, programs, systems, or information services."

### Pre-Litigation Demand and Its Consequences

58.     After receipt of GoDaddy's "pre-litigation demand" letter, Entri temporarily paused support for GoDaddy domains in hopes of resolving this this dispute outside litigation.

59.     As a result of this temporary pause, Entri has suffered and will continue to suffer irreparable harm.

60.     Entri immediately, upon announcement of the temporary pause, gave a 30% discount to customers in this market.

61.     For some of its customers, Entri was forced to provide a 100% discount to keep them from leaving. Some of its clients have already terminated their contracts. This includes, without limitation, ██████████

62.     Many of Entri's customers will almost certainly terminate their relationship with Entri if this pause in service continues.

63.     When it determined that a resolution would not be forthcoming outside litigation, Entri resumed service of its customers who have domains registered with GoDaddy on or about the time it filed this complaint.

64.     Despite resuming service for GoDaddy domains, Entri is still providing these discounts to customers given the uncertainty associated with this dispute.

## Lanham Act

65.     GoDaddy's Lanham Act claims are pretextual. After receipt of the January 11th letter, Entri immediately removed all of GoDaddy's logos from its site.

66.     After resuming support for GoDaddy domains, every Entri user that seeks domain configuration software services for a domain hosted on GoDaddy sees a disclaimer that Entri is not affiliated with GoDaddy and that the use of the trademark is used only as "necessary to clearly identify the relevant services and is not intended to imply or suggest any affiliation, sponsorship, endorsement, or business relationship with GoDaddy.com, LLC or its affiliated entities." Below is a screenshot of the disclaimer:



67.     Entri uses the GoDaddy mark because it was the only plausible way to alert Entri customers of the service it provides.

68.     Entri's use of the GoDaddy mark constitutes nominative fair use.

69.     Entri has never had any intent to mislead any shared customers.

70.     Upon information and belief, no shared customers have been misled by Entri's use of GoDaddy's mark.  Rather Entri's customers know that it is a domain configuration software services provider and that GoDaddy is a domain registrar and that the two businesses are unaffiliated.

71.     Consequently, Entri's use of GoDaddy's mark causes no likelihood of confusion.

**Intellectual Property Claims in the Absence of Intellectual Property**

72.     GoDaddy's intellectual property claims in its pre-litigation demand are frivolous. Customers' domain names—whether they are characterized as GoDaddy's customers or Entri's customers or both—belong to the customers themselves. Indeed, GoDaddy has often relied on this same argument to defeat other legal claims when it defended itself in the past.

73.     Domain Connect is an open-source software designed and owned by GoDaddy. If GoDaddy wishes to engage in a voluntary course of business with Entri, Entri is willing, as it has in the past, to work within the Domain Connect framework. If not, Entri has many other software tools at its disposal, which it believes to be superior to Domain Connect, to service its customers. These tools do not and need not incorporate Domain Connect software in any way.

**Breach of Contract Allegations**

74.     GoDaddy's API ToU breach of contract claim is not just frivolous, it is nefarious.

75.     Entri was never a party to this API ToU. Upon information and belief, it never consented to, clicked through, or agreed to this purported contract.

76.     Upon information and belief, before March 7, 2024, it never had notice of this document.

77.     Upon information and belief, Entri discovered evidence that GoDaddy recently manipulated this API ToU to insert targeted language prohibiting Entri's legitimate business activities. This was done without notice to customers or users and without updating the "date of last revision" on the API ToU itself.

78.     As of the date of Entri's response to GoDaddy's pre-litigation demand, GoDaddy's API ToU claimed to have been last revised on March 1, 2023, when in reality, GoDaddy manipulated this "contract" in February or March of 2024. Not only is this act of manipulation

fatal to any purported breach of contract claim insofar as there was no "meeting of the minds," it is also incontrovertible evidence of bad faith and fraud.

79.     Upon information and belief, on or about March 29, 2024, GoDaddy again manipulated its API ToU, and again failed to notify users or customers, and again falsified the true date when these manipulations occurred. The most recent iteration of the API ToU now has the following new provision: "Users or other entities shall not charge any fees, require any payment or compensation, or otherwise offer a service behind a paywall that uses any part of the GoDaddy API or offer any services or products that use or rely on the GoDaddy API, including any services or products offered to users by third parties." The current date of last revision is now improperly marked March 1, 2024, or a week before GoDaddy sent its pre-litigation demand and three weeks before Entri responded and called attention to the initial manipulation.

80.     Regardless of the fraudulent machinations GoDaddy has employed with respect to its API ToU, these new terms are irrelevant, and change nothing of the substance of this dispute. This new term does not even apply to Entri's conduct, and it shows the extent to which GoDaddy simply fails to understand what Entri does for its users. Entri does not accept and has never accepted the API ToU to perform services on behalf of its users. Entri simply is not a party to this contract.

81.     And given the repeated modifications without consideration, there is no reasonable interpretation of the law of contracts that would make this a binding contract.

## **Market Dominance**

82.     Upon information and belief, GoDaddy and its affiliates are the custodians of approximately 85 million internet domains.

83. Ascertaining the exact market position of any company in the domain registration market is an admittedly difficult task. GoDaddy intentionally attempts to obfuscate its market share through a series of obscure subsidiaries, from Wild West Domains, LLC to GoDaddy Online Services Cayman Islands Ltd.

84. Experts who specialize in the field do not know exactly what percentage of the small business domain registration market the most important registrars, including GoDaddy, possess. This is in part because of services such as Domains By Proxy®, a service launched by GoDaddy that obfuscates the actual owner of a domain.

85. But as profitable and dominant as GoDaddy's market position is as a domain registrar, its growth associated with this particular market has been relatively modest. Upon information and belief, GoDaddy's growth associated with this market is only in the range of about 4% a year.

86. As such, GoDaddy must seek out markets adjacent to its core market to achieve growth that outperforms the market.

87. Entri's business is to make software that simplifies and automates the process of interacting with internet domains. To function on and to interact with the internet, an internet domain must be "configured" in such a way that its domain registrar points the domain to the web server where the domain's website will be hosted.

88. Entri automates the configuration of DNS for companies at scale so that businesses can have a simple, accessible, easily scalable process to automate their domain settings.

89. Entri has many software tools to provide domain configuration software services for companies.

90.     GoDaddy has the Domain Connect software that it licenses for customers as its domain configuration software service.

91.     GoDaddy has recently taken the position that Domain Connect is the *only* domain configuration software that can legally access domains for which GoDaddy is the domain registrar.

### CFAA as an Anti-Competitive Sword

92.     GoDaddy recently decided that it wanted to control and dominate Entri's relevant market instead of collaborating with Entri.

93.     At first, GoDaddy wanted to do so by requiring Entri to pay a "license fee" to access GoDaddy domains even though the domain names for which GoDaddy is the custodian are not GoDaddy's intellectual property.

94.     Then, after trying to convince Entri customers to switch providers, GoDaddy determined that the only effective way to compete in Entri's market was to eliminate the competition in Entri's market by excluding Entri from accessing domains for which it is custodian.

95.     When given the choice between working with Entri and working with GoDaddy, Entri's customers choose to work with Entri.

96.     GoDaddy's conduct has given rise to this action because it is trying to eliminate that choice.

97.     To effectuate its rent-seeking, GoDaddy has invoked the CFAA to exclude Entri's participation in the market.

98.     The CFAA is an anti-hacking statute; it was not drafted to empower monopolists to create walled gardens with monopoly rents.

99.     Automation, without harm, is not hacking.

100.    The CFAA is not a remedy that is available in the absence of *technological harm*. Here, there is no *technological harm* to GoDaddy's "computer data, programs, systems, or information services." Entri is not harming *any* computer system.

101.    Rather, Entri simply automates the domain configuration preferences of its users who are also GoDaddy's customers.

102.    The only *harm* GoDaddy faces is *competitive harm*. More specifically, the harm of having to compete on a level playing field in the domain configuration software services market.

103.    GoDaddy seeks a "license fee" for access to domains that are hosted on its site. In essence, it wants to charge a "license" to access property that it does not own.

104.    GoDaddy has developed software called Domain Connect that can automate domain configuration settings. Entri, however, has developed a suite of tools and services that provide value that its customers prefer.

105.    GoDaddy believes that it can eliminate the competition by invoking the CFAA.

106.    Through its "pre-litigation demand" and other public statements, GoDaddy insists that Domain Connect is the *only* legal software solution that can access the domains in its system. It is openly declaring its intent to engage in exclusive tying of its dominant domain registration service with its domain configuration software, Domain Connect.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment That Entri Has Not Violated the CFAA

107.    Entri alleges and hereby incorporates by reference all preceding paragraphs as though set forth fully herein.

108.    An actual controversy exists between Entri and GoDaddy. On March 7, 2024, GoDaddy sent Entri a letter that it described as a "pre-litigation demand." The letter twice states that further access of GoDaddy's systems would constitute a violation of the CFAA.

109.    Upon information and belief, GoDaddy has already threatened Entri's business and its customers by suggesting that Entri's conduct is illegal.

110.    Plaintiff seeks a declaration that its simple, automated process for configuring domain settings for its customers does not constitute a violation of the CFAA, as there is no technological harm to GoDaddy's "computer data, programs, systems, or information services."

111.    Entri prays for relief as set forth below.

**SECOND CLAIM FOR RELIEF**
**Declaratory Judgment that Entri Has Not Breached GoDaddy's**
**API Terms of Use**

112.    Entri alleges and hereby incorporates by reference all preceding paragraphs as though set forth fully herein.

113.    An actual controversy exists between Entri and GoDaddy.

114.    On March 7, 2024, GoDaddy sent Entri a letter that it described as a "pre-litigation demand." The letter twice alleges that Entri's domain configuration software solutions are in breach of a purported API Terms of Use.

115.    Entri was never a party to this purported contract, and never had notice of this contract before March 7, 2024.

116.    GoDaddy has already threatened Entri's business and, upon information and belief, threatened its customers by suggesting that Entri's conduct is illegal.

117.    Plaintiff seeks a declaration that no valid contract was formed between the parties. Furthermore, the purported contract is null and void due to GoDaddy's fraud.

118.    Entri prays for relief as set forth below.

## THIRD CLAIM FOR RELIEF
### Declaratory Judgment that Entri's Current Customer Log-in Portal Does Not Violate Sections 32 and 43(a) of the Lanham Act

119.    Entri alleges and hereby incorporates by reference all preceding paragraphs as though set forth fully herein.

120.    An actual controversy exists between Entri and GoDaddy.

121.    On March 7, 2024, GoDaddy sent Entri a letter that it described as a "pre-litigation demand." The letter twice alleges that Entri's customer log-in process violates Sections 32 and 43(a) of the Lanham Act.

122.    GoDaddy has already threatened Entri's business and, upon information and belief, threatened its customers by suggesting that Entri's conduct is illegal.

123.    Plaintiff seeks a declaration that its current customer log-in portal as shown in paragraph 66 of the complaint does not violate Sections 32 and 43(a) of the Lanham Act.

124.    Entri prays for relief as set forth below.

## FOURTH CLAIM FOR RELIEF
### Tortious Interference with a Contract

125.    Entri alleges and hereby incorporates by reference all preceding paragraphs as though set for fully herein.

126.    Entri has valid contractual relationships with many clients that have internet domains registered with GoDaddy.

127.    Many of these contracts have definite, extended terms.

128.    GoDaddy is aware of these contractual relationships, because Entri and GoDaddy had a mutual working relationship between April 2022 and January 2024, where they both provided customer services for these clients.

129.    Upon information and belief, GoDaddy interfered with the contracts of several of Entri's customers. This includes, without limitation, ████████████████████████████ ████████████████████████████

130.    GoDaddy has intentionally induced a breach of these contractual relationships through scare tactics, legal threats, and coercion, among other improper and unlawful tactics.

131.    Entri has suffered damages as a result of GoDaddy's improper and unlawful attempts to induce a breach of its existing contractual relationships. To date, Entri has lost an estimated $564,000 in annualized revenue as a result of GoDaddy's improper and unlawful conduct.

132.    Entri prays for relief as set forth below.

**FIFTH CLAIM FOR RELIEF**
**Tortious Interference with a Business Expectancy**

133.    Entri alleges and hereby incorporates by reference all preceding paragraphs as though set for fully herein.

134.    Entri has a valid business expectancy with certain prospective clients that have internet domains registered with GoDaddy. This includes, without limitation, ████████████

135.    GoDaddy is aware of these valid business expectancy because of the parties' long-standing business relationship.

136.    GoDaddy has intentionally induced these third parties to not work with Entri, through scare tactics, legal threats, and coercion, among other improper and unlawful tactics.

137.    There is a reasonable certainty, that absent GoDaddy's intentional misconduct, Entri would have realized the business expectancy with these prospective customers.

138.    Entri has suffered damages in the form of lost revenue that it would have received had GoDaddy not engaged in illegal attempts to interfere with Entri's business expectancy.

139.    Entri prays for relief as set forth below.

## **PRAYER FOR RELIEF**

140.    Plaintiff Entri prays for judgments against Defendant GoDaddy as follows:

1. For injunctive relief to prevent GoDaddy from restricting Entri's access to customers' domains.

2. For a declaration that GoDaddy shall not be permitted to restrict Entri's access to customers' domains, absent a showing of technological harm to GoDaddy's "computer data, programs, systems, or information services."

3. For a declaratory judgment that Entri has not violated the CFAA, that its customer log-in does not violate the Lanham Act, and that it has not breached GoDaddy's API Terms of Use Agreement.

4. Any damages proximately caused by the wrongful attempt to deny access to customers' domains on GoDaddy.

5. Any damages proximately caused by GoDaddy's wrongful actions in trying to steal Entri's customers;

6. Entri's attorneys' fees and costs incurred in pursuing these claims as permitted by law, and

7. For additional relief as the Court deems just and proper.


Dated: April 8, 2024

Respectfully Submitted,


/s/ Mariam W. Tadros
Mariam W. Tadros (VSB # 75502)
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons, VA 22102
T: 703-394-2267
F: 703-790-2623
mariam.tadros@wbd-us.com

*Counsel for Plaintiff Entri LLC*