# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

ENTRI, LLC,

      Plaintiff,

vs.

GODADDY.COM, LLC,

      Defendant.

Case No. 1:24-cv-00569-AJT-WEF

## DEFENDANT GODADDY.COM, LLC'S OPPOSITION TO PLAINTIFF ENTRI LLC'S MOTION TO STRIKE OBJECTIONS AND TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO ENTRI'S FIRST SET OF REQUESTS FOR PRODUCTION

6765548

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENTS...........................................................................................2

   A.  Entri's Motion to Strike Should Be Denied. ...........................................2

      1.   GoDaddy's Vagueness Objections Are Proper...............................3

      2.   Entri's Requests Are Facially Overbroad and Unduly Burdensome..............5

      3.   Entri's Requests Seek Irrelevant Information. ...............................6

      4.   GoDaddy's Objections Are Not Waived........................................7

   B.  Entri's Motion to Compel Should Be Denied. .........................................8

   C.  GoDaddy Should Be Granted Attorneys' Fees .......................................16

III.  CONCLUSION.........................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Daedalus Blue, LLC v. MicroStrategy Inc.*,
  2021 WL 11709428 n.5 (E.D. Va. May 3, 2021) ....................................................... 8

*Deutsche Bank Nat'l Tr. Co. v. Fegely*,
  2020 WL 201048 (E.D. Va. Jan. 13, 2020) .............................................................. 2

*Food Lion, LLC v. Dairy Farmers of Am., Inc.*,
  2020 WL 6949004 (M.D.N.C. Oct. 6, 2020) .......................................................... 10

*Hager v. Graham*,
  267 F.R.D. 486 (N.D. W. Va. 2010) ....................................................................... 8

*India Brewing, Inc. v. Miller Brewing Co.*,
  237 F.R.D. 190 (E.D. Wis. 2006) .......................................................................... 11

*Indus. Packaging Supplies, Inc. v. Davison*,
  2018 WL 10456202 (D.S.C. Oct. 4, 2018) ............................................................ 10

*Intelligent Verification Systems, LLC v. Microsoft Corp.*,
  2014 WL 12544827 (E.D. Va. 2014) ....................................................................... 8

*Kidwiler v. Progressive Paloverde Ins. Co.*,
  192 F.R.D. 193 (N.D. W. Va. 2000) ....................................................................... 7

*Marlow v. Chesterfield Cnty. Sch. Bd.*,
  2010 WL 3660770 (E.D. Va. Sept. 15, 2010) .................................................... 5, 10

*Oppenheimer v. Williams*,
  2021 WL 4086197 (D.S.C. Sept. 8, 2021) ............................................................... 8

*Patrick v. Teays Valley Trustees, LLC*,
  297 F.R.D. 248 (N.D. W. Va. 2013) ................................................................... 1, 3

*SAS Institute Inc. v. World Programming Ltd.*,
  2013 WL 6247217 (E.D.N.C. Nov. 26, 2013) ....................................................... 11

*Sheppheard v. Just.*,
  2024 WL 3166065 (S.D. W. Va. June 25, 2024) ...................................................... 5

*Swimways Corp. v. Aqua-Leisure Indus., Inc.*,
  2017 WL 3262135 (E.D. Va. July 31, 2017) ..................................................... 16, 17

ii

### TABLE OF AUTHORITIES (cont.)

*Twigg v. Pilgrim's Pride Corp.*,
  2007 WL 676208 (N.D. W. Va. Mar. 1, 2007) ........................................................................ 5, 6

<u>Rules</u>

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................................. 8

Federal Rule of Civil Procedure 37(a)(5)(A)(ii) ............................................................................ 16

iii

## I.   <u>INTRODUCTION</u>

Entri's First Set of Requests for Production are a collection of highly objectionable requests that seek an incredible number of documents and communications untethered from the core issues in this case.  One egregious example includes Entri's request for "All documents that embody, refer or relate to, reflect, identify, or analyze any communications with other domain registrars regarding so-called 'aggregators' or Entri."  *See* Dkt. 81-1 at 20.  Not only does the request require GoDaddy to scour every communication with thousands of other domain registrars,[1] but it also requires GoDaddy to hunt for every document that in any way relates or refers to such communications.  This is just one of several objectionable requests.

After receiving Entri's requests, GoDaddy served detailed objections setting forth numerous deficiencies with the requests.  For instance, GoDaddy objected to some requests as vague by specifying the term and explaining the ambiguity.  *See id.* at 11 (unclear whether the term "resources" as used in connection with "providing support to customers" refers to "money, personnel, technology, or some other measure").  Entri then failed to meaningfully engage with GoDaddy's objections.  Entri served a meet and confer letter on August 28, 2023, that simply labeled GoDaddy's vagueness objections as "frivolous" without discussing the ambiguities GoDaddy identified or clarifying the meaning of any terms.  *See* Dkt. 81-2 at 2-3.  Entri took a similar approach during the two meet and confers, beginning each call by noting its general disagreement with GoDaddy's objections and stating that it would be unproductive to walk through each request in detail.  *See* Declaration of Erik Savitt ("Savitt Decl.") ¶ 3.  Entri's failure to "engage in meaningful negotiation" is itself grounds to deny the motion.  *Patrick v. Teays Valley Trustees,*

---

[1] There are 2,400 domain registrars accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN").  *See* <u>https://www.godaddy.com/resources/skills/best-domain-registrars-overview</u> (last visited September 25, 2024).

*LLC*, 297 F.R.D. 248, 266 (N.D. W. Va. 2013) ("The failure to follow the requirement to confer, or attempt to confer, is grounds for the court to deny the motion to compel.").[2]

In short, Entri's approach has been to serve facially overbroad, vague, and irrelevant requests and seek judicial intervention rather than meaningfully meet and confer when GoDaddy failed to rewrite Entri's requests.  This is improper.  Entri's motions to strike and compel production of documents should be denied.

## II.   ARGUMENTS

### A.   Entri's Motion to Strike Should Be Denied.

Entri characterizes GoDaddy's "fifty-plus pages" of objections as boilerplate. Dkt. 81 at 4. They are not.  The scope of GoDaddy's objections is a function of the extremely objectionable nature of Entri's requests, which are facially overbroad, vague, unduly burdensome, and irrelevant. That GoDaddy repeats certain objections is simply a function of how consistently objectionable Entri's Requests are. And GoDaddy has specifically identified the grounds for its objections, including by identifying which portion of Entri's requests are objectionable and the reason such portion is objectionable.  GoDaddy has thus gone far beyond "[m]erely characterizing a discovery request as 'overly broad, burdensome, oppressive and irrelevant.' " *Deutsche Bank Nat'l Tr. Co. v. Fegely*, 2020 WL 201048, at *6 (E.D. Va. Jan. 13, 2020).   Entri's motion to strike should be denied.

---

[2] The only headway made during these calls was the result of GoDaddy's clarifying questions regarding Requests 5, 13, and 23, which are not the subject of Entri's motion. Savitt Decl. ¶ 6. GoDaddy also asked clarifying questions regarding the scope and meaning of several other requests including Requests 1 and 15, but Entri's responses merely confirmed GoDaddy's objections.

### 1. GoDaddy's Vagueness Objections Are Proper.

GoDaddy's vagueness objections are sufficiently specific. GoDaddy identified the vague

terms and the reasons why such terms are susceptible to a myriad of interpretations, including, but

not limited to:

- **Request 1** for the term "organizational structure" because it is unclear whether this term "refers" to the organization of "business units, entities, or individuals." Dkt. 81-1 at 2.

- **Request 2** for the terms "responsibility," "strategic partnerships," and "any other area of GoDaddy's business implicated by the claims and defenses in this case," as these terms provide "no discernible limit." *Id.* at 5-6.

- **Request 6** for the term "resources" because it could refer to "money, personnel, technology, or some other measure"; and to the term "concerned with," which could mean either "related to" or "worried about." *Id.* at 11.

- **Request 11** for the term "aggregators" and because the request calls for "All documents" related to "Any communications," which provides "no discernible limit." *Id.* at 20.

- **Request 14** for the term "information technology infrastructure" because it "does not specify which particular pieces of infrastructure are at issue." *Id.* at 26.

- **Request 15** for the term "outsource," which could "refer either to the location or the entity managing the servers or information technology infrastructure." The request also calls for "All documents" related to "Communications," which provides "no discernible limit." *Id.* at 28.

- **Request 26** for the term "efforts" because it is unclear whether this "encompasses customer outreach, promotions, discounts, or instead seeks information regarding any alleged technological barriers." *Id.* at 46-47.

Whatever disagreements Entri has regarding GoDaddy's vagueness objections go to the merits of

a motion to compel. But GoDaddy's identification of vague terms and explanation regarding the

ambiguity requires denying Entri's motion to strike. *See Patrick v. Teays Valley Trustees, LLC*,

297 F.R.D. 248, 257 (N.D. W. Va. 2013) (assessing merits of objection where objection

specifically identifies vague term).

- 3 -

6765548

During the parties' meet and confers, GoDaddy made a good-faith effort to clarify certain vague terms, but Entri's responses only confirmed the vague nature of the requests.  For instance, GoDaddy asked for clarification regarding the term "organizational structure" as used in Request 1, and Entri responded that the term means any of the multitude of ways GoDaddy is organized, including by department, business unit, legal entity, corporate structure, and reporting structure. Savitt Decl. ¶ 4.  In other words, Entri merely confirmed the amorphous meaning of this term. GoDaddy also asked Entri what "outsource" means as used in Request 15, and Entri responded that the term includes decisions as simple as GoDaddy opting to use Amazon Web Services.  *Id.* Put another way, this term encompasses virtually any contact with a third-party technology provider regarding any service.

On the other hand, Entri made no effort to clarify its other ambiguous requests.  Entri's meet-and-confer letter dated August 28, 2024 simply dismisses GoDaddy's objections as "frivolous" but does not provide any explanation regarding the meaning of the terms highlighted by GoDaddy.  *See* Dkt. 81-2 at 2.  Entri's September 10, 2024 email regarding GoDaddy's responses also fails to offer any details regarding the vague terms.  *See generally* Dkt. 81-4.  And at both telephonic meet and confers, Entri stated that discussing GoDaddy's specific objections to each request would be unproductive.  Savitt Decl. ¶ 3.

Entri's remaining arguments for striking GoDaddy's vagueness objections are meritless. Entri quibbles with GoDaddy's objection to the use of the terms "GoDaddy" and "Your," but GoDaddy states in its objections that it "will construe" such requests "as referring to GoDaddy.com, LLC."  *See, e.g.,* Dkt 81-2 at 28.  Entri does not contend that this interpretation is improper.  Dkt. 81 at 5.

- 4 -

### 2.     Entri's Requests Are Facially Overbroad and Unduly Burdensome.

Entri's requests are facially overbroad and lack any semblance of proportionality to the needs of the case.  The requests at issue ask for all documents and communications related to broad swaths of GoDaddy's business over more than 56 months, including documents and communications with millions of GoDaddy customers.  *See Sheppheard v. Just.*, 2024 WL 3166065, at *5-*6 (S.D. W. Va. June 25, 2024) (denying "motion to overrule the overly broad, unduly burdensome, and disproportional objections" asserted in response to requests for "all internal communications regarding any investigation of any correctional facility").

For instance, GoDaddy objects to Requests 6, 25, and 26 because they seek <u>all</u> documents for GoDaddy's more than **20 million** customers related to DNS configuration and switching domain registrars.  *See* Dkt. 81-1 at 11, 44-47; Dkt. 22 ("FAC") ¶ 148.  Requests that seek every document relating to such a high volume of customers are inherently overbroad.  *See Marlow v. Chesterfield Cnty. Sch. Bd.*, 2010 WL 3660770, at *4 (E.D. Va. Sept. 15, 2010) (request is overbroad and unduly burdensome because it seeks information regarding "8,000 employees, most of whom have no information relevant to the claims at issue").

Requests 11 and 15 are even broader: these requests seek <u>all documents</u> that "embody, refer, or relate to, reflect, identify, or analyze" <u>any communications</u> (i) with thousands of other domain registrars, and (ii) related to outsourcing any aspect of GoDaddy's information technology.  In other words, these requests seek not just all communications but any documents that relate or refer to these communications.  The universe of potentially responsive documents is virtually unlimited, and GoDaddy cannot feasibly search for such documents.  *Twigg v. Pilgrim's Pride Corp.*, 2007 WL 676208, at *9 (N.D. W. Va. Mar. 1, 2007) ("a request for production is facially

- 5 -

over broad and unduly burdensome where it is questionable which of many documents the request encompasses").

Even Entri's purportedly modest requests for "documents sufficient" are overbroad. For instance, Request 2 seeks "documents sufficient to show" every employee having "any responsibility" for broad swaths of GoDaddy's business, including domain registration, strategic partnerships, DNS management offerings, DNS configuration offerings, Domain Connect, and "any other area of GoDaddy's business implicated by the claims and defenses in this case." *See* Dkt. 81-1 at 3-4. GoDaddy has thousands of current and former employees and, as GoDaddy explained in its objections, Request 2 would require GoDaddy "to produce an excessive number of documents identifying an untold number of individuals of little or no relevance to this litigation." *Id.* Requests for documents "related to a claim or defense in the litigation" are also facially deficient. *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000).

Instead of addressing the substance of GoDaddy's overbreadth objections, Entri complains that GoDaddy failed to submit evidence of burden with its objections. Dkt. 81 at 8. But such burden is apparent from the face of Entri's overbroad requests, including requests that encompass all communications with GoDaddy's 20+ million customers related to a broad subject matter. *See Twigg*, 2007 WL 676208, at *5 (burden shifts to moving party to show why discovery is appropriate where "the request is overly broad and unduly burdensome on its face"). GoDaddy's objections are proper.

### 3.   Entri's Requests Seek Irrelevant Information.

GoDaddy's relevance objections are proper. As GoDaddy specifically explains in its objections, many of Entri's requests encompass wide swaths of irrelevant information. For

instance, GoDaddy's organizational structure (Request 1), which would reveal GoDaddy's entire corporate structure and all unrelated affiliates and business units, is irrelevant to the claims and defenses in this case, which concern only GoDaddy.com, LLC and its domain registration and Domain Connect products. *See* Dkt. 81-1 at 2. GoDaddy's document retention policies (Request 4) are also irrelevant to the merits of any claim or defense, and Entri tacitly admits in its motion by failing to offer any basis on which such documents are pertinent to any claim or defense in this action. *See* Dkt. 81 at 12 ("GoDaddy's document retention policy" is "*potentially* relevant") (emphasis added). Entri's communications with other domain registrars (Request 11) are also irrelevant, as Entri does not allege that GoDaddy has ever communicated or conspired with other registrars to exclude Entri. *See* Dkt. 81-1 at 20. These are just a few examples of GoDaddy's validly asserted relevance objections.

Entri falsely accuses GoDaddy of refusing production on topics such as "Domain Connect" and "GoDaddy's decision to prohibit the use of Entri Connect." This is simply not true. GoDaddy agreed to produce documents on both topics, including in response to Requests 5 and 12. *See* Dkt. 81-3 at 4, 7. Entri also contends it "would happily have worked with GoDaddy" to alleviate its relevance concerns. Dkt. 81 at 7. This contention, however, is belied by Entri's approach during the parties' meet and confers, where it twice stated that walking through GoDaddy's specific objections would be unproductive. Savitt Decl. ¶ 3.

### 4.     GoDaddy's Objections Are Not Waived.

GoDaddy has asserted specific and detailed objections that comply with the requirements imposed by the Federal Rules of Civil Procedure. Accordingly, Entri's motion to strike must be denied, and the Court should find that all GoDaddy's objections are preserved.

Even if the Court were to find that some of GoDaddy's objections were improper, the proper remedy is to overrule the deficient objections and evaluate the properly asserted objections on the merits. *Daedalus Blue, LLC v. MicroStrategy Inc.*, 2021 WL 11709428, at *5 n.5 (E.D. Va. May 3, 2021) ("Daedalus requests that the Court strike MicroStrategy's objections, but the Court finds that the appropriate remedy for the deficiency in this instance is to overrule the general objections."); *Hager v. Graham*, 267 F.R.D. 486, 492-93 (N.D. W. Va. 2010) (federal rules do not prohibit "a general objection in addition to [] specific grounds"); *Oppenheimer v. Williams*, 2021 WL 4086197, at *2 n.1 (D.S.C. Sept. 8, 2021) (assessing "some substantive, pointed objections" even though most objections were "fatally nonspecific"). Entri's contention that GoDaddy has waived all objections based on a few "illustrative examples" of allegedly improper objections should be rejected. *See* Dkt. 81 at 4.

### C. **Entri's Motion to Compel Should Be Denied.**

District courts have the power to limit discovery, including when it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive or the burden or expense of the proposed discovery outweighs its likely benefit." *Intelligent Verification Systems, LLC v. Microsoft Corp.*, 2014 WL 12544827, at *1 (E.D. Va. Jan. 9, 2014) (quoting Fed. R. Civ. P. 26(b)(2)(C)). The Court should deny Entri's motion to compel as to all requests at issue because Entri's requests are improper.

**REQUEST NO. 1**: **Documents sufficient to show or identify your organizational structure.**

Request No. 1 is overbroad and seeks documents that are irrelevant to the issues in this case. Entri only asserts claims against GoDaddy.com, LLC related to its domain registration and DNS configuration products. Yet Entri's request for documents disclosing GoDaddy's "organizational structure" encompasses a wide swath of irrelevant information regarding

- 8 -

6765548

GoDaddy's many unrelated business units and product lines, and corporate entities not implicated by this lawsuit.  In fact, Entri confirmed this overbroad and irrelevant scope during the parties' first meet and confer call on August 30, 2024, when Entri stated it is seeking documents disclosing how <u>all</u> business units, departments, and corporate entities under the GoDaddy umbrella are structured.  Savitt Decl. ¶ 4.  In other words, most information sought by this request does not relate to the sole defendant in this action (GoDaddy.com, LLC), or the products (domain registration and domain configuration) at the center of Entri's lawsuit.

To compensate for the overbroad and irrelevant nature of this request, Entri characterizes the request as "ordinary" and "garden variety."  Dkt. 81 at 11-12.  Yet Entri provides no support for its contention that the organizational structure of a large LLC and its publicly traded member (GoDaddy Inc.) is *always* relevant, let alone to the specific claims asserted in this lawsuit.  In fact, courts routinely limit discovery into organizational documents.  *See Indus. Packaging Supplies, Inc. v. Davison*, 2018 WL 10456202, at *2 (D.S.C. Oct. 4, 2018) (discovery into LLC organizational and ownership structure is not proper "until a Court has sufficient reason to disregard the corporate being").

**<u>REQUEST NO. 2:</u> Documents sufficient to show or identify your past or current officers, directors, agents, and employee(s) who have or have had any responsibility for GoDaddy's domain registration business, its strategic partnerships, its DNS management offerings, its DNS configuration offerings, the Domain Connect protocol, or any other area of GoDaddy's business implicated by the claims and defenses in this case, including any organizational charts related to any of the same.**

Request No. 2 is overbroad and would require GoDaddy to produce an incredible number of documents identifying an untold number of individuals with no relevance to this litigation.  This request seeks disclosure of *every* individual that has ever had any involvement with at least five separate products or business offerings since January 1, 2020.  The request is also impermissibly vague, which compounds the overly broad nature of the request.  For instance, the request seeks

information about every individual that has had "any responsibility," which appears to encompass any individual that has ever performed any task, no matter how small (e.g., an email, phone call, or single assignment).  And it includes an open-ended request related to "any other area of GoDaddy's business implicated by the claims and defenses in this case."  This request "clearly runs afoul of the principle that requests for production cannot be so open-ended as to call simply for documents related to a claim or defense in this action." *Food Lion, LLC v. Dairy Farmers of Am., Inc.*, 2020 WL 6949004, at *7 (M.D.N.C. Oct. 6, 2020).

This request is anything but "ordinary" or "garden variety."  Dkt. 81 at 11-12.  Since January 1, 2020, GoDaddy has employed thousands of individuals.  Moreover, the product offerings implicated by this request are core components of GoDaddy's business.  Consequently, this request encompasses numerous individuals, many of whom will have limited to no relevance to the issues in this case. *See Marlow v. Chesterfield Cnty. Sch. Bd.*, 2010 WL 3660770, at *4 (E.D. Va. Sept. 15, 2010) (request is overbroad and unduly burdensome because it seeks information regarding thousands of employees).[3]

Entri tries to limit the scope of this request by arguing in its motion to compel that it is entitled to discover which GoDaddy employees are responsible for "domain registration services" and "Domain Connect."  Dkt. 81 at 12-13. But this request extends far beyond these product offerings, including to strategic partnerships, DNS configuration methods beyond Domain Connect (e.g., manual configuration, or configuration with Entri Connect), DNS management, and any other area of GoDaddy's business vaguely "implicated" by the claims or defenses in this

---

[3] Contrary to Entri's assertion, GoDaddy's "similar" request to Entri for documents sufficient to identify persons related to Entri Connect is in fact dissimilar: Entri has 20 employees, and GoDaddy's request is expressly limited to the single Entri product at issue in this litigation, Entri Connect.

- 10 -

litigation. Entri was unwilling to narrow the scope of this request during the parties' meet and confers, and its post hoc attempt to do so in its motion to compel should be rejected.

**Request No. 4:  Documents sufficient to show or identify your document retention policies.**

GoDaddy's document retention policies are not "relevant to any claim or defense," as there is no allegation that GoDaddy has "destroyed documents pertinent to the case" or failed to retain relevant documents.  *See India Brewing, Inc. v. Miller Brewing Co.*, 237 F.R.D. 190, 192 (E.D. Wis. 2006) (denying motion to compel document retention policy). Entri tacitly concedes that GoDaddy's document retention policies are not yet relevant, stating in its motion that the retention policies are "*potentially* relevant" to the "sufficiency of GoDaddy's responses to remaining RFPs." Dkt. 81 at 12 (emphasis added).  GoDaddy's similar request for Entri's document retention policies does not waive GoDaddy's objections to Request 4, as each discovery request must be independently analyzed.  *See SAS Institute Inc. v. World Programming Ltd.*, 2013 WL 6247217, at *8 (E.D.N.C. Nov. 26, 2013) (the "failure by plaintiff to produce discovery does not excuse defendant from its obligations to do so").  In any event, as GoDaddy explained during the August 30, 2024 meet and confer, GoDaddy's request for Entri's document retention policies—which was issued *after* Entri propounded this improper request—is intended to preserve GoDaddy's right to obtain the same documents should Entri prevail on a motion to compel. Savitt Decl. ¶ 5.  GoDaddy continues to believe document retention policies are irrelevant and will withdraw its request if the Court denies relief.

**REQUEST NO. 6**: **All documents that embody, refer or relate to, reflect, identify, or analyze the resources you have expended providing support to customers with GoDaddy-registered domains concerned with DNS configuration.**

This request is woefully overbroad.  The request seeks all documents that in any way relate to the resources expended on providing support to every customer with a GoDaddy-registered domain concerned with DNS configuration.  GoDaddy has **20+ million customers**.  FAC ¶ 148.

- 11 -

Entri's request thus encompasses every single email, chat, communication, notice, request, memo, or guide that is related to providing support to potentially millions of customers concerned with DNS configuration over more than 56 months, including all such documents sent to or received by these customers.  This request is also vague, which only compounds its overbreadth. For instance, the word "resources" requires GoDaddy to guess whether Entri is seeking information regarding money, personnel, technology, some other measure of support, or a combination of any or all the aforementioned measures.  GoDaddy cannot possibly guess which of these measures Entri intends. And to the extent Entri intends the request to encompass all these measures, it multiplies the number of documents encompassed by the request many times over.

In its motion, Entri attempts to cure this vague and facially overbroad request by conjuring limitations not found in the text of the request.  For instance, Entri contends that the ability of "Domain Connect" to "eradicate confusion" is relevant (Dkt. 81 at 13), but the request is not limited to Domain Connect or confusion.  As written, the request encompasses all forms of DNS configuration, including manual configuration, configuration with Domain Connect, and configuration with Entri Connect.  The request also encompasses all forms of support—not just alleviating confusion—which may, for example, encompass communications related to new features or product offerings.

**REQUEST NO. 11:**  **All documents that embody, refer or relate to, reflect, identify, or analyze any communications with other domain registrars regarding so-called "aggregators" or Entri.**

Entri's request for "<u>All</u> documents" that refer or relate to "<u>any</u> communications" with other domain registrars regarding "aggregators" or "Entri" is incomprehensibly vague.   The communications sought by this request are themselves vague, as Entri requests communications regarding so-called "aggregators" without providing a definition of this term or a list of example aggregators.  Contrary to Entri's assertion, the term "aggregators" is not a GoDaddy-coined term

but rather a term Entri has used to describe itself in communications with GoDaddy and throughout its First Amended Complaint.  *See* FAC ¶¶ 119, 170.  GoDaddy thus employs the term "aggregator" in its motion to dismiss but does not otherwise know which entities this label applies to.  The formulation of the request is also vague in that it seeks "documents" related to "communications," rather than simply the communications themselves.  It thus appears that Entri may be seeking documents that discuss or reference the communications with registrars, in addition to the communications themselves.  For this same reason, this request has no discernible limit.

The request is also irrelevant.  Entri speculates that communications with other domain registrars might reveal efforts by GoDaddy to extend the prohibition of Entri beyond GoDaddy domains and that GoDaddy's reasons for prohibiting Entri Connect are pretextual.  Dkt. 81 at 13.  This is a baseless fishing expedition.  Entri's complaint alleges a negative tie imposed upon GoDaddy's customers, and a coerced agreement between GoDaddy and SaaS Companies.  There is not a single allegation that GoDaddy has attempted to extend its prohibition to other registrars or otherwise had communications with registrars regarding Entri.

**REQUEST NO. 14**: **All documents that embody, refer or relate to, reflect, identify, or analyze the location of GoDaddy's servers and/or information technology infrastructure pertaining to the urls account.godaddy.com and sso.godaddy.com.**

This request is overly broad, vague, and irrelevant.  The request is overbroad because it seeks all documents that reflect the location of GoDaddy's servers and information technology infrastructure, even though the location of such equipment is static.  In other words, production of all documents embodying the location provides Entri with no additional information beyond documents sufficient to show the relevant locations.  The documents are also irrelevant.  Entri contends that the request is relevant to its declaratory judgment claim under the Computer Fraud and Abuse Act ("CFAA") because the request goes to "the extent of any harm suffered by

- 13 -

GoDaddy's computer systems or infrastructure" from Entri Connect.  Dkt. 81 at 13-14.  But the location of GoDaddy's IT equipment has no bearing on harm.  In fact, Entri propounded a separate request (RFP 13) for documents related to harm from Entri Connect, which GoDaddy agreed to produce during the parties' meet and confer on September 12, 2024.  Savitt Decl. ¶ 6.

**REQUEST NO. 15:** **All documents that embody, refer or relate to, reflect, identify, or analyze communications related to any decisions to outsource any aspect of GoDaddy's servers or information technology infrastructure.**

Request No. 15 is yet another incomprehensibly vague request with no discernible limits.  The subject matter of the communications sought by this request are themselves vague, as Entri seeks communications related to any decision to "outsource," which could refer either to GoDaddy changing the location, method, or entity managing the server or information technology infrastructure.  The term "information technology infrastructure" is also vague, as it fails to disclose the kinds of services, applications, software, or hardware encompassed by this request.[4]  In fact, when GoDaddy raised the vague nature of this request to Entri during the August 30, 2024 meet and confer, Entri responded that the request was intended to encompass decisions as simple as using Amazon Web Services.  *See* Savitt Decl. 4.  In other words, the request may encompass virtually any decision by GoDaddy to employ any IT service over more than 56 months.  Such a vague and limitless request does not provide GoDaddy with any feasible mechanism for searching for responsive documents and is disproportionate to any probative value.

---

[4] Entri contends the meaning of "information technology infrastructure" is clear because "GoDaddy uses" this term in its own "Resources Library."  Dkt. 81 at 6.  But the article Entri cites is a blog post written by an individual named Juned Ghanchi, who does not appear to be a GoDaddy employee.  *See* https://www.linkedin.com/in/junedghanchi/?originalSubdomain=in (last visited September 25, 2024).  In any event, this blog post only emphasizes the vague nature of the request, as the term "information technology infrastructure" is used broadly throughout the blog post to refer to things that "[i]nterconnect operational processes," "[s]treamline information," and "[i]ntegrate tools and applications."  *See* www.godaddy.com/resources/in/web-pro-in/understanding-soa-in-cloud-computing-and-its-key-advantages (last visited September 24, 2024).

The vagueness and overbreadth of this request is compounded by the request's modifiers. Entri seeks "All documents" that refer or relate to any "communications" related to "any decisions" to outsource "any aspect" of GoDaddy's servers or information technology infrastructure. In addition to seeking all communications regarding outsourcing—which itself would be overbroad—Entri is also seeking all documents that relate or refer to these communications. The request is thus virtually unlimited in scope.

The request is also irrelevant, including to Entri's claim for declaratory judgment under the CFAA. Dkt. 81 at 13-14. Entri again maintains that outsourcing of GoDaddy's infrastructure is relevant to the issue of harm. But the "outsourcing" of any aspect of GoDaddy's IT infrastructure has no bearing on whether Entri's unauthorized configuration of GoDaddy domains causes harm. In fact, Entri propounded a separate request (RFP 13) for documents related to any harm, which GoDaddy agreed to produce during the parties' meet and confer on September 12, 2024. Savitt Decl. ¶ 6.

**REQUEST NO. 25**: **All documents that embody, refer or relate to, reflect, identify, or analyze any complaints, from whatever source, that it is difficult to switch from GoDaddy to another domain registrar.**

Entri's request is unduly burdensome. The request for "All documents" related to complaints regarding switching makes this request overly broad and unduly burdensome, as it encompasses every communication related to switching for GoDaddy's "20+ million customers across 84+ million domains" since January 1, 2020. FAC ¶ 148. GoDaddy cannot feasibly search for responsive documents, as GoDaddy's customer accounts are not compiled in a way that allows for a centralized search across all accounts. Savitt Decl. ¶ 8. Responding to this request would require an exhaustive and comprehensive account-by-account word search as well as a detailed review and analysis of every customer interaction to determine whether (1) the customer is attempting to switch registrars, and (2) the communications reflect that the customer believes it is

difficult to switch.  *Id.*  GoDaddy estimates this search would take thousands of hours to complete at a cost of hundreds of thousands of dollars.  *Id.*

**REQUEST NO. 26:** **All documents that embody, refer or relate to, reflect, identify, or analyze your efforts to prevent customers with GoDaddy-registered domains from switching to another domain registrar.**

Entri's request is vague and unduly burdensome.  As GoDaddy explained in its objections, the word "efforts" could be read to encompass: (1) a variety of customer-retention initiatives such as outreach, promotions, and discounts; (2) technical barriers to switching; and (3) the GoDaddy-customer touchpoints.  Moreover, the request for "All documents" related to switching makes this request overly broad and unduly burdensome, as it encompasses every communication related to switching for GoDaddy's "20+ million customers across 84+ million domains" since January 1, 2020.  FAC ¶ 148.  GoDaddy cannot feasibly search for responsive documents, as GoDaddy's customer accounts are not compiled in a way that allows for a centralized search across all accounts.  Savitt Decl. ¶ 8.  Responding to this request would require an exhaustive and comprehensive account-by-account word search as well as a detailed review and analysis of every customer interaction to determine whether the customer is attempting to switch registrars.  *Id.* GoDaddy estimates this search would take thousands of hours to complete at a cost of hundreds of thousands of dollars.  *Id.*

### D.   GoDaddy Should Be Granted Attorneys' Fees.

Federal Rule of Civil Procedure 37(a)(5)(A)(ii) "prohibits courts from imposing attorney's fees on a party who failed to comply with discovery procedure if its nondisclosure was 'substantially justified.'"  *Swimways Corp. v. Aqua-Leisure Indus., Inc.*, 2017 WL 3262135, at *2 (E.D. Va. July 31, 2017) (citing Fed. R. Civ. P. 37(a)(5)(A)(ii)).  A party is substantially justified in opposing discovery "if there is a genuine dispute as to proper resolution or if a reasonable person

- 16 -

could think that the failure to produce discovery is correct, that is, if it has a reasonable basis in law and fact." *Id.*

For all the reasons explained above, GoDaddy is substantially justified in opposing Entri's requests for production and Entri's request for attorneys' fees and costs must be denied. Entri, however, lacks substantial justification for its motion, including because its requests are facially overbroad and unduly burdensome. GoDaddy thus requests an Order awarding GoDaddy its costs and reasonable attorneys' fees incurred in connection with opposing Entri's motion.

## III.   **CONCLUSION**

For the foregoing reasons, GoDaddy respectfully requests that the Court (i) deny Entri's motion to strike; (ii) find GoDaddy's objections properly preserved; (iii) deny Entri's motion to compel GoDaddy to produce documents responsive to Entri Requests 1, 2, 4, 6, 11, 14, 15, 25, and 26; and (iv) deny Entri's request for costs and attorneys' fees, and award GoDaddy its costs and reasonable attorneys' fees.

Dated:  September 25, 2024                       Respectfully submitted,

/s/ _____
                                        Douglas J. Dixon (pro hac vice)
                                        Andrew K. Walsh (pro hac vice)
                                        Justin M. Greer (pro hac vice)
                                        Erik C. Savitt (pro hac vice)
                                        Hueston Hennigan LLP
                                        620 Newport Center Dr., Suite 1300
                                        Newport Beach, CA 92660
                                        Phone: (949) 229-8640
                                        Fax: (888) 866-4825
                                        ddixon@hueston.com

6765548

/s/  /s/ *Chad E. Kurtz*
    Chad E. Kurtz
    VA Bar No. 88863
    COZEN O'CONNOR
    1200 19th Street NW, Suite 300
    Washington, D.C. 20036
    Tel: (202) 463-2521
    Fax: (202) 640-5939
    ckurtz@cozen.com

    *Attorneys for Defendant GoDaddy.com, LLC*

6765548

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2024, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

/s/ <i>Chad E. Kurtz</i>
Chad E. Kurtz
*Attorney for Defendant GoDaddy.com, LLC*
