**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ENTRI, LLC, | Case No. 1:24-cv-00569-AJT-WEF |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| GODADDY.COM, LLC, | |
| Defendant. | |

## DEFENDANT GODADDY.COM, LLC'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant GoDaddy.com, LLC ("GoDaddy"), by and through its undersigned attorneys, hereby submits the following answer, affirmative defenses, and counterclaims in response to the First Amended Complaint ("FAC") filed by Entri, LLC ("Entri"). The numbered paragraphs of this Answer correspond to the numbered paragraphs in the FAC. Pursuant to Federal Rule of Civil Procedure 8(b)(3), GoDaddy denies each allegation in the FAC, except those expressly admitted in the responses below. By noting or admitting that the FAC purports to characterize or quote particular documents, GoDaddy does not admit the truth of any assertion in the referenced documents. Moreover, headings and footnotes contained within the FAC are not substantive allegations to which an answer is required. To the extent headings and footnotes are substantive allegations to which an answer is required, GoDaddy denies the allegations.

GoDaddy responds to the allegations in the FAC as follows:

## INTRODUCTION

1.      GoDaddy admits that Entri is a tech company founded in 2021. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 1, and on that basis denies them.

2.      GoDaddy admits that individuals and companies use their websites to, among other things, connect with fans and customers, reach an audience, and/or grow their businesses. GoDaddy admits that some website owners utilize third-party applications in connection with their websites. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 2, and on that basis denies them.

3.      GoDaddy admits only that a website owner that wants a third-party application to work on the owner's website must connect the website with the third-party application.  GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 3, and on that basis denies them.

4.      GoDaddy admits the allegations in Paragraph 4.

5.      GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 5, and on that basis denies them.

6.      GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 6, and on that basis denies them.

7.      GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 7, and on that basis denies them.

8.      GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 8, and on that basis denies them.

6783797

9.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 9, and on that basis denies them.

10.    GoDaddy admits that it is a domain name registrar with over 82 million domain names under management, and that GoDaddy does not own the websites associated with the domain names registered through GoDaddy by members of the public. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 10, and on that basis denies them.

11.    GoDaddy admits that in April 2022, GoDaddy and Entri entered into a one-year "Domain Connect Integration and License Agreement" (the "Agreement"). The Agreement is a written document that speaks for itself. To the extent that the allegations in Paragraph 11 purport to summarize or interpret that document, those allegations are denied, and GoDaddy denies the remaining allegations in Paragraph 11.

12.    GoDaddy admits that in March 2024, GoDaddy updated its API Terms of Use. The API Terms of Use is a written document that speaks for itself. To the extent that the allegations in Paragraph 12 purport to summarize or interpret that document, those allegations are denied. GoDaddy further admits communicating to certain third parties that GoDaddy no longer supported Entri Connect. GoDaddy denies the remaining allegations in Paragraph 12.

13.    GoDaddy denies the allegations in Paragraph 13.

14.    GoDaddy admits that its users are required to configure their DNS records either by manual configuration or use of Domain Connect. GoDaddy denies the remaining allegations in Paragraph 14.

15.    GoDaddy admits that Domain Connect is an open standard protocol. GoDaddy denies the remaining allegations in Paragraph 15

- 3 -

6783797

16.    GoDaddy denies the allegations in Paragraph 16.

17.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 17, and on that basis denies them.

18.    GoDaddy admits that its API Terms of Use do not permit its customers to use Entri Connect. GoDaddy denies the remaining allegations in Paragraph 18.

19.    GoDaddy admits that on March 7, 2024, it sent a letter to Entri in response to improper and unlawful conduct by Entri. That letter is a written document that speaks for itself. To the extent that the allegations in Paragraph 19 purport to characterize, summarize, or interpret that document, those allegations are denied. GoDaddy denies the remaining allegations in Paragraph 19.

20.    GoDaddy denies the allegations in Paragraph 20.

21.    GoDaddy denies the allegations in Paragraph 21.

22.    GoDaddy's website is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy denies the remaining allegations in Paragraph 22.

23.    GoDaddy denies the allegations in Paragraph 23.

### PARTIES

24.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 24, and on that basis denies them.

25.    GoDaddy admits the allegations in Paragraph 25.

6783797

## JURISDICTION AND VENUE

26.     The allegations in Paragraph 26 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 26.

27.     The allegations in Paragraph 27 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 27.

28.     The allegations in Paragraph 28 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 28.

## FACTUAL BACKGROUND

29.     GoDaddy admits that websites are increasingly important in the digital age. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 29, and on that basis denies them.

30.     GoDaddy admits that users can register domain names through a domain registrar. GoDaddy's website is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy denies the remaining allegations in Paragraph 30.

31.     GoDaddy admits that users can register domain names through a domain registrar. GoDaddy further admits that GoDaddy is an accredited domain name registrar with the Internet Corporation for Assigned Names and Numbers (ICANN). GoDaddy further admits that ICANN is an international non-profit organization. GoDaddy denies the remaining allegations in Paragraph 31.

32.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 32, and on that basis denies them.

33.     GoDaddy admits that Entri does not "own" the domain name entri.com. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 33, and on that basis denies them.

34.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 34, and on that basis denies them.

35.     GoDaddy admits that domain registrants can turn to third-party website building services and that some of these services may simplify or automate the process of designing a website, including by way of an application. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 35, and on that basis denies them.

36.     GoDaddy admits the allegations in Paragraph 36.

37.     GoDaddy admits that Wix is a SaaS company that provides personalized website building and design services. The allegations reference a writing that speaks for itself. To the extent that an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 37, and on that basis denies them.

38.     GoDaddy admits the allegations in Paragraph 38.

39.     GoDaddy admits that Neo is a SaaS company that provides a solution to create email addresses in connection with a domain. The allegations reference a writing that speaks for itself. To the extent that an answer is deemed necessary, GoDaddy denies Entri's characterization

of that writing. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 39, and on that basis denies them.

40.     GoDaddy admits the allegations in Paragraph 40.

41.     GoDaddy admits that Square is a SaaS company that provides payment processing services. The allegations reference a writing that speaks for itself. To the extent that an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 41, and on that basis denies them.

42.     GoDaddy admits that Kajabi is a SaaS company that provides platform development services, including support for online courses. The allegations reference a writing that speaks for itself. To the extent that an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 42, and on that basis denies them.

43.     GoDaddy admits that Mailchimp is a SaaS company that provides an email marketing solution. The allegations reference a writing that speaks for itself. To the extent that an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 43, and on that basis denies them.

44.     GoDaddy admits that website owners, both individuals and businesses, use the services of SaaS companies in designing and creating their websites. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 44, and on that basis denies them.

45.     GoDaddy admits that operating a SaaS company's application through a user's website generally requires the SaaS application to be integrated with the domain name associated with that website. GoDaddy otherwise denies the allegations of Paragraph 45.

46.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 46, and on that basis denies them.

47.     GoDaddy admits that domain integration is the process of connecting a domain to a website or service. GoDaddy further admits that a properly integrated third-party application may function within a user's website. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 47, and on that basis denies them.

48.     GoDaddy admits that domain integration uses DNS, or the Domain Name System, by connecting domain names to numeric IP addresses. GoDaddy's website is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy denies the remaining allegations in Paragraph 48.

49.     GoDaddy admits that connecting the services of a third-party SaaS company to a domain generally requires updating the domain's DNS records. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 49, and on that basis denies them.

50.     GoDaddy admits that there are more than 30 types of DNS records. GoDaddy further admits that integrating a SaaS application into a domain may require updating multiple DNS records. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 50, and on that basis denies them.

51.     GoDaddy admits that without the use of standards or services like Domain Connect, updating DNS records is a manual process. GoDaddy further admits that manually updating DNS

- 8 -

records requires a user to manually edit records through an account with their DNS provider. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 51, and on that basis denies them.

52.     GoDaddy admits that different domain registrars may have distinct user interfaces, terminology, and rules for updating DNS records. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 52, and on that basis denies them.

53.     GoDaddy admits that some SaaS companies may provide instructions for updating DNS records. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 53, and on that basis denies them.

54.     GoDaddy admits that some users may seek customer support in connection with DNS record configuration. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 54, and on that basis denies them.

55.     GoDaddy's 2019 blog post is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing.

56.     GoDaddy admits that it created a protocol called Domain Connect. GoDaddy denies the remaining allegations in Paragraph 56.

57.     GoDaddy admits that the Domain Connect protocol gives domain registrars and third-party SaaS companies a standard to update DNS records. GoDaddy admits that third-party SaaS companies can use the Domain Connect protocol to create "templates" that contain the DNS record changes required for the third-party application to function within a domain. GoDaddy otherwise denies the allegations in Paragraph 57.

58.     GoDaddy admits the allegations in Paragraph 58.

59.     GoDaddy admits that Domain Connect protocol only functions with a DNS provider that has adopted the protocol and otherwise denies the allegations of Paragraph 59 as to the Domain Connect protocol.  GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 59, and on that basis denies them.

60.     GoDaddy admits that the Domain Connect protocol is an open-source protocol, not an application. GoDaddy denies the remaining allegations in Paragraph 60.

61.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 61, and on that basis denies them.

62.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 62, and on that basis denies them.

63.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 63, and on that basis denies them.

64.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 64, and on that basis denies them.

65.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 65, and on that basis denies them.

66.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 66, and on that basis denies them.

67.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 67, and on that basis denies them.

68.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 68, and on that basis denies them.

6783797

69.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 69, and on that basis denies them.

70.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 70, and on that basis denies them.

71.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 71, and on that basis denies them.

72.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 72, and on that basis denies them.

73.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 73, and on that basis denies them.

74.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 74, and on that basis denies them.

75.     GoDaddy denies the allegations in Paragraph 75 that relate to Domain Connect. GoDaddy denies Entri's characterization of Domain Connect. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 75, and on that basis denies them.

76.     GoDaddy denies the allegations in Paragraph 76 that relate to Domain Connect. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 76, and on that basis denies them.

77.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 77, and on that basis denies them.

78.     GoDaddy denies the allegations in Paragraph 78 that relate to Domain Connect. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 78, and on that basis denies them.

79.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 79, and on that basis denies them.

80.     GoDaddy denies that it has threatened Entri's customers or attempted to restrict Entri from assisting end users in setting up their stated DNS configuration preferences. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 80, and on that basis denies them.

81.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 81, and on that basis denies them.

82.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 82, and on that basis denies them.

83.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 83, and on that basis denies them.

84.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 84, and on that basis denies them.

85.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 85, and on that basis denies them.

86.     GoDaddy admits that in April 2022, GoDaddy and Entri entered into a one-year "Domain Connect Integration and License Agreement" (the "Agreement"). GoDaddy otherwise denies the allegations in Paragraph 86 that relate to GoDaddy. GoDaddy lacks sufficient

knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 86, and on that basis denies them.

87.     GoDaddy admits that pursuant to the Agreement, Entri was permitted to request new templates to be onboarded by GoDaddy free of charge. GoDaddy denies the remaining allegations in Paragraph 87.

88.     GoDaddy denies the allegations in Paragraph 88.

89.     GoDaddy admits that there was a Slack channel through which Entri and GoDaddy could communicate directly. GoDaddy denies the remaining allegations in Paragraph 89.

90.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations that customers did not experience problems as a result of Entri Connect. GoDaddy denies the remaining allegations in Paragraph 90.

91.     GoDaddy denies the allegations in Paragraph 91.

92.     The Slack communication by Robert Philip is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy denies the remaining allegations in Paragraph 92.

93.     GoDaddy denies the allegations in Paragraph 93 relating to GoDaddy. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 93, and on that basis denies them.

94.     GoDaddy admits that Carissa Pompei, GoDaddy's Director of Business Development, began communicating with Entri on or about August 28, 2023. GoDaddy denies the remaining allegations in Paragraph 94.

95.     GoDaddy admits that in or around September 2023, GoDaddy and Entri began negotiating a new Domain Connect Integration and License Agreement that would replace the

previous Agreement between the parties, which expired on April 8, 2023. GoDaddy otherwise denies the allegations in Paragraph 95.

96. The email by Robert Philip is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy denies the remaining allegations in Paragraph 96.

97. GoDaddy denies the allegations in Paragraph 97.

98. GoDaddy denies the allegations in Paragraph 98.

99. GoDaddy denies the allegations in Paragraph 99.

100. GoDaddy denies the allegations in Paragraph 100.

101. GoDaddy's communication to Duda is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 101.

102. Entri's allegations reference a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 102.

103. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 103, and on that basis denies them.

104. GoDaddy denies the allegations in Paragraph 104.

105. GoDaddy denies the allegations in Paragraph 105.

106. GoDaddy denies the allegations in Paragraph 106.

107. GoDaddy denies the allegations in Paragraph 107.

108. GoDaddy denies the allegations in Paragraph 108.

109. GoDaddy denies the allegations in Paragraph 109.

6783797

110.    GoDaddy denies the allegations in Paragraph 110.

111.    GoDaddy admits that it communicated to certain SaaS companies that customers who registered domains with GoDaddy would not be able to use aggregators, like Entri, for DNS configuration. GoDaddy denies the remaining allegations in Paragraph 111.

112.    GoDaddy admits that in or around February 2024, a GoDaddy representative communicated to Square that Entri Connect would no longer work with GoDaddy domains. GoDaddy denies the remaining allegations in Paragraph 112.

113.    GoDaddy's communication to WebFlow is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 113.

114.    GoDaddy admits that in or around February 2024, a GoDaddy representative communicated to WPEngine that Entri Connect would no longer work with GoDaddy domains. GoDaddy otherwise denies the allegations in Paragraph 114.

115.    GoDaddy admits that in or around Q1 2024, GoDaddy communicated to certain SaaS companies that Entri Connect would no longer work with GoDaddy domains in response to inquiries by certain companies who had relationships with GoDaddy. GoDaddy otherwise denies the allegations in Paragraph 115.

116.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 116, and on that basis denies them. To the extent that Entri's allegations reference a writing, the writing speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 116.

117.    GoDaddy denies the allegations in Paragraph 117.

118.    GoDaddy admits that it revised its API Terms of Use in or around March 1, 2024. GoDaddy denies the remaining allegations in Paragraph 118.

119.    GoDaddy admits that it revised its API Terms of Use in or around March 1, 2024. GoDaddy denies Entri's allegations characterizing the changes in the API Terms of Use. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 119, and on that basis denies them.

120.    GoDaddy denies the allegations in Paragraph 120.

121.    The GoDaddy API Terms of Use is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy denies the remaining allegations in Paragraph 121.

122.    GoDaddy denies the allegations in Paragraph 122.

123.    The Slack communication is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 123.

124.    GoDaddy denies the allegations in Paragraph 124.

125.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 125, and on that basis denies them.

126.    GoDaddy denies that it uses the services of a third-party company called Kasada.io for Domain Connect. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of allegations relating to the error message received from Kasada.io. GoDaddy denies the remaining allegations in Paragraph 126.

127.    GoDaddy denies the allegations in Paragraph 127.

128.    GoDaddy denies the allegations in Paragraph 128.

129.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 129, and on that basis denies them.

130.    GoDaddy denies the allegations in Paragraph 130 as they relate to GoDaddy. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 130, and on that basis denies them.

131.    To the extent that Entri is quoting a document, the writing speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 131.

132.    To the extent that Entri is quoting a document, the writing speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 132.

133.    To the extent that Entri is quoting a document, the writing speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 133.

134.    GoDaddy denies the allegations in Paragraph 134.

135.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 135, and on that basis denies them.

136.    GoDaddy denies the allegations in Paragraph 136.

137.    The allegations in Paragraph 137 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 137.

138.     The allegations in Paragraph 138 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 138.

139.     The allegations in Paragraph 139 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 139.

140.     The allegations in Paragraph 140 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 140.

141.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 141, and on that basis denies them.

142.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 142, and on that basis denies them.

143.     The allegations in Paragraph 143 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 143.

144.     To the extent that Entri is quoting a document, the writing speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 144.

145.     The allegations in Paragraph 145 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 145.

- 18 -

146.     GoDaddy admits that domain configuration services are not required for a customer to register a domain. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 146, and on that basis denies them.

147.     GoDaddy denies the allegations in Paragraph 147.

148.     GoDaddy's website is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 148.

149.     Entri's allegations relate to a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy further denies the truth of the writing. GoDaddy otherwise denies the allegations in Paragraph 149.

150.     GoDaddy's 2023 10-K filing is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 150.

151.     GoDaddy denies the allegations in Paragraph 151.

152.     The allegations in Paragraph 152 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 152.

153.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of Entri's allegations that it switched its domain registrar from GoDaddy to CloudFlare, and on that basis denies them. GoDaddy denies the remaining allegations in Paragraph 153.

154.     GoDaddy denies the allegations in Paragraph 154.

155.     GoDaddy denies the allegations in Paragraph 155.

156.    Entri's allegations relate to a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy denies the truth of the writing. GoDaddy otherwise denies the allegations in Paragraph 156.

157.    Entri's allegations relate to a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy denies the truth of the writing. GoDaddy otherwise denies the allegations in Paragraph 157.

158.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of Entri's allegations regarding messages received from other SaaS companies, and on that basis denies them. GoDaddy denies the remaining allegations in Paragraph 158.

159.    GoDaddy denies the allegations in Paragraph 159.

160.    GoDaddy denies the allegations in Paragraph 160.

161.    GoDaddy denies the allegations as they relate to GoDaddy in Paragraph 161. The remaining allegations in Paragraph 161 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 161.

162.    GoDaddy denies the allegations in Paragraph 162.

163.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 163, and on that basis denies them.

164.    GoDaddy denies the allegations in Paragraph 164.

165.    GoDaddy denies the allegations as they relate to GoDaddy in Paragraph 165. GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding Entri's use of automation process, and on that basis denies them. GoDaddy otherwise denies the allegations in Paragraph 165.

166.    GoDaddy denies the allegations in Paragraph 166.

6783797

167.    The allegations in Paragraph 167 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 167.

168.    GoDaddy's website is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 168.

169.    GoDaddy denies the allegations in Paragraph 169.

170.    GoDaddy denies the allegations in Paragraph 170.

171.    GoDaddy denies the allegations in Paragraph 171.

172.    GoDaddy denies the allegations in Paragraph 172.

173.    GoDaddy denies the allegations in Paragraph 173. The allegations in Paragraph 173 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 173.

174.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations that Nostra has ended its relationship with Entri, and on that basis denies them. GoDaddy otherwise denies the allegations in Paragraph 174.

175.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 175, and on that basis denies them.

176.    GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 176, and on that basis denies them.

177.    GoDaddy denies the allegations in Paragraph 177.

178.     Entri's allegations relate to a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 178.

179.     The allegations in Paragraph 179 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 179.

180.     GoDaddy denies the allegations in Paragraph 180.

181.     GoDaddy admits sending a letter to Entri on or about March 7, 2024. The letter is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 181.

182.     GoDaddy denies the allegations in Paragraph 182.

183.     The allegations in Paragraph 183 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 183.

184.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 184, and on that basis denies them.

185.     The allegations in Paragraph 185 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 185.

186.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 186, and on that basis denies them.

6783797

187.     The allegations in Paragraph 187 refer to a writing that speaks for itself. To the extent that an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing, including that it is "prominently display[ed]." GoDaddy otherwise denies the allegations in Paragraph 187.

188.     GoDaddy denies the allegations in Paragraph 188.

189.     The allegations in Paragraph 189 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 189.

190.     The allegations in Paragraph 190 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 190.

191.     The allegations in Paragraph 191 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 191.

192.     GoDaddy denies the allegations in Paragraph 192.

193.     GoDaddy denies the allegations in Paragraph 193.

194.     GoDaddy denies the allegations in Paragraph 194.

195.     GoDaddy denies the allegations in Paragraph 195.

196.     The allegations in Paragraph 196 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 196.

197.     The allegations in Paragraph 197 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 197.

198.     The allegations in Paragraph 198 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 198.

199.     GoDaddy admits that it communicated in a letter on or around March 7, 2024, that Entri had breached the API Terms of Use. GoDaddy denies the allegations that relate to GoDaddy's amendments to the API Terms of Use. The remaining allegations in Paragraph 199 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 199.

200.     GoDaddy denies the allegations in Paragraph 200.

201.     GoDaddy denies the allegations in Paragraph 201.

202.     The allegations in Paragraph 202 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 202.

203.     The allegations in Paragraph 203 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 203.

204.     GoDaddy denies the allegations in Paragraph 204.

205.     GoDaddy denies the allegations in Paragraph 205.

6783797

206.     The allegations in Paragraph 206 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 206.

207.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 207 relating to Entri's experiences and awareness, and on that basis denies them.

208.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 208, and on that basis denies them.

209.     GoDaddy lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 209, and on that basis denies them.

210.     GoDaddy denies the allegations in Paragraph 210.

**CAUSES OF ACTION**
**FIRST CLAIM FOR RELIEF**
**Violation of Sherman Act, Section 1, 15 U.S.C. § 1**

Negative Tying

211.     GoDaddy incorporates its answers set forth above as if set forth fully herein.

212.     The allegations in Paragraph 212 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 212.

213.     The allegations in Paragraph 213 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 213.

6783797

214.    The allegations in Paragraph 214 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 214.

215.    The allegations in Paragraph 215 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 215.

216.    The allegations in Paragraph 216 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 216.

217.    The allegations in Paragraph 217 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 217.

218.    The allegations in Paragraph 218 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 218.

<u>Agreement in Restraint of Trade</u>

219.    GoDaddy incorporates its answers set forth above as if set forth fully herein.

220.    The allegations in Paragraph 220 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 220.

221.    The allegations in Paragraph 221 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 221.

222.    The allegations in Paragraph 222 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 222.

223.    The allegations in Paragraph 223 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 223.

224.    GoDaddy denies that Entri is entitled to any relief it seeks.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment That Entri Has Not Violated CFAA

225.    GoDaddy incorporates its answers set forth above as if set forth fully herein.

226.    The allegations in Paragraph 226 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 226.

227.    GoDaddy denies the allegations in Paragraph 227.

228.    GoDaddy denies that Entri is entitled to any such declaration. The allegations in Paragraph 228 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 228.

229.    GoDaddy denies that Entri is entitled to any such declaration. The allegations in Paragraph 229 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 229.

230.    GoDaddy denies that Entri is entitled to any relief it seeks.

## THIRD CLAIM FOR RELIEF
### Declaratory Judgment That Entri Has Not Breached GoDaddy's API Terms of Use

231.    GoDaddy incorporates its answers set forth above as if set forth fully herein.

232.    The allegations in Paragraph 232 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 232.

233.    The allegations in Paragraph 233 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 233.

234.    GoDaddy denies the allegations in Paragraph 234.

235.    GoDaddy denies that Entri is entitled to any such declaration. The allegations in Paragraph 235 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 235.

236.    GoDaddy denies that Entri is entitled to any such declaration. The allegations in Paragraph 236 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 236.

237.    GoDaddy denies that Entri is entitled to any such declaration. The allegations in Paragraph 237 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 237.

238.    GoDaddy denies that Entri is entitled to any relief it seeks.

## FOURTH CLAIM FOR RELIEF
### Declaratory Judgment That Entri's Current Customer Log-In Portal Does Not Violate Sections 32 and 43(a) of the Lanham Act

239.    GoDaddy incorporates its answers set forth above as if set forth fully herein.

240.    The allegations in Paragraph 240 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 240.

241.     GoDaddy admits to sending Entri a letter on or about March 7, 2024. The letter is a writing that speaks for itself. To the extent an answer is deemed necessary, GoDaddy denies Entri's characterization of that writing. GoDaddy otherwise denies the allegations in Paragraph 241.

242.     GoDaddy denies the allegations in Paragraph 242.

243.     GoDaddy denies that Entri is entitled to any such declaration. The allegations in Paragraph 243 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 243.

244.     GoDaddy denies that Entri is entitled to any relief it seeks.

## FIFTH CLAIM FOR RELIEF
### Tortious Inteference with a Contract

245.     GoDaddy incorporates its answers set forth above as if set forth fully herein.

246.     The allegations in Paragraph 246 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 246.

247.     GoDaddy denies the allegations in Paragraph 247.

248.     GoDaddy denies the allegation in Paragraph 248 as they relate to GoDaddy's actions. The allegations in Paragraph 248 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 248.

249.     The allegations in Paragraph 249 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 249.

250.     GoDaddy denies the allegations in Paragraph 250.

251.     GoDaddy denies that Entri is entitled to any relief it seeks.

## SIXTH CLAIM FOR RELIEF
### Tortious Inteference with a Business Expectancy

252.     GoDaddy incorporates its answers set forth above as if set forth fully herein.

253.     The allegations in Paragraph 253 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 253.

254.     GoDaddy denies the allegations in Paragraph 254.

255.     GoDaddy denies the allegations in Paragraph 255.

256.     The allegations in Paragraph 256 are legal conclusions to which no response is required. To the extent a response is deemed necessary, GoDaddy denies the allegations in Paragraph 256.

257.     GoDaddy denies that Entri is entitled to any relief it seeks.

## PRAYER FOR RELIEF

Entri's jury demand does not contain any factual or legal assertions to which a response is required. GoDaddy denies the averments contained in the Prayer for Relief, denies that Entri is entitled to any of the forms of relief requested in the Prayer for Relief, or any other relief, and requests that the Court deny relief to Entri and enter judgment in favor of GoDaddy.

## AFFIRMATIVE DEFENSES

Without conceding that any of the following necessarily must be pleaded as an affirmative defense, or that any of the following is not already at issue by virtue of the foregoing denials, and without prejudice to GoDaddy's right to plead additional defenses as discovery into the facts of the matter warrant, GoDaddy hereby asserts the following affirmative defenses. GoDaddy reserves the right to amend its defenses further as additional information is developed through discovery or

otherwise. Pursuant to Fed. R. Civ. P. 8(c), GoDaddy alleges the following affirmative defenses to Entri's FAC.

### First Affirmative Defense

### (Failure to State a Claim)

The First Amended Complaint, and some or all of the alleged causes of action contained therein, fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

### (Standing)

Entri is barred from maintaining this action because it lacks statutory standing as it did not suffer an injury in fact or any damage, nor was it actually aggrieved.

### Third Affirmative Defense

### (Waiver and Acquiescence)

Entri's claims are barred, in whole or in part, based on the doctrines of waiver and acquiescence.

### Fourth Affirmative Defense

### (Estoppel)

Entri's claims are barred, in whole or in part, by estoppel.

### Fifth Affirmative Defense

### (Laches)

Entri has unreasonably delayed in asserting its rights.

6783797

**Sixth Affirmative Defense**

**(Unclean Hands)**

Entri is not entitled to equitable relief because it has unclean hands, having failed its obligations under the parties' relevant contracts and agreements.

**Seventh Affirmative Defense**

**(Failure to Mitigate)**

Entri's claims are barred, in whole or in part, because Entri failed to mitigate damages, if any, allegedly suffered as a result of the conduct it alleges.

**Eighth Affirmative Defense**

**(Relevant Market)**

Entri's claims are foreclosed because it has not alleged and cannot establish a plausible relevant market in which competition has been harmed.

**Ninth Affirmative Defense**

**(Geographic Market)**

Entri's claims are foreclosed because it has not alleged and cannot establish a plausible relevant geographic market in which competition has been harmed.

**Tenth Affirmative Defense**

**(Bona fide Business Competition)**

Entri's claims are barred because all of GoDaddy's alleged actions were lawful, justified, procompetitive, carried out in the furtherance of GoDaddy's legitimate business interests, and constitute bona fide business competition.

**Eleventh Affirmative Defense**

**(Lawful Conduct)**

Entri's claims are barred, in whole or in part, because some or all of the acts alleged against GoDaddy are expressly permitted by state or federal statute, regulation, or other law.

**Twelfth Affirmative Defense**

**(Causation)**

Entri's claims are barred, in whole or in part, because Entri's alleged injuries were not caused by any act or omission related to GoDaddy.

**Thirteenth Affirmative Defense**

**(Indirect Purchaser Rule)**

Entri's claims are barred, in whole or in part, by the indirect purchaser rule set forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) and any of its state-law analogs.

**Fourteenth Affirmative Defense**

**(Speculative Damages)**

Entri's claims are barred, in whole or in part, because its alleged damages, if any, are speculative, and because of the impossibility of ascertaining and allocating these alleged damages.

**Fifteenth Affirmative Defense**

**(Comparative Fault)**

Entri's claims are barred, in whole or in part, because any injury Entri suffered was not caused by or attributable to GoDaddy's acts, practices, or conduct, but was caused by or attributable to Entr's own conduct or that of third parties.

6783797

**Sixteenth Affirmative Defense**

**(Unjust Enrichment)**

Entri's claims are barred, in whole or in part, because any recovery from GoDaddy would result in the unjust enrichment of Entri.

**Seventeenth Affirmative Defense**

**(Valid Business Purpose)**

Entri's claims are barred, in whole or in part, because the alleged conduct was reasonably related to a valid business purpose.

**Eighteenth Affirmative Defense**

**(Lack of Cognizable Injury)**

Entri's claims are barred, in whole or in part, because Entri has not suffered any cognizable harm, antitrust or otherwise.

**Nineteenth Affirmative Defense**

**(No Adverse Effects on Competition)**

GoDaddy's alleged activities do not give rise to liability because they did not result in adverse effects on competition or, in the alternative, any such effects were outweighed by the pro-competitive benefits of the activities.

**Twentieth Affirmative Defense**

**(Failure to Allege Fraud with Particularity)**

Entri fails to allege fraud with the requisite particularity required.

6783797

## GODADDY'S ADDITIONAL ALLEGATIONS AND COUNTERCLAIMS

Pursuant to Federal Rule of Procedure 13, Counter-Plaintiff GoDaddy asserts these Counterclaims against Counter-Defendant Entri. In support thereof, GoDaddy alleges as follows:

### PARTIES

1.      GoDaddy.com, LLC, is a Delaware limited liability company with its principal place of business in Maricopa County, Arizona.

2.      On information and belief, Entri, LLC is a Virginia limited liability company with its principal place of business in Loudon County, Virginia.

### JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Entri because it is headquartered in Virginia and has its principal place of business in Virginia. Further, Entri has consented to this Court's jurisdiction by bringing this lawsuit.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201, and 2202, as Entri has alleged federal causes of action.

5.      This Court further has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

6.      Venue is proper in this Court because Entri resides in Loudoun County, Virginia.

### FACTUAL BACKGROUND

**I.      GoDaddy is a Domain Registrar.**

7.      To navigate the internet, each interconnected computer must have a unique numeric address, known as an Internet Protocol or "IP" address.

- 35 -

6783797

8.     IP addresses are strings of numbers that are difficult to remember, but the "Domain Name System" (DNS) allows a more easily remembered word or phrase—the "domain name"—to be associated with an IP address.

9.     Use of domain names thus makes it easier to navigate to a particular website. For instance, rather than needing to remember a complex list of numbers, you need only enter "GoDaddy.com," the domain name, into a web browser to navigate to GoDaddy's website.

10.     To obtain a domain name, users rely on companies called domain "registrars." GoDaddy is one of many domain registrars.

11.     The registrar function is passive: a registrar's computers receive requests to register domain names and, if no one has yet registered those domains, the registrar's computers can automatically handle the registration.

12.     For a fee and pursuant to a registration agreement, the registrar will associate the domain name with an accompanying IP address and make it available to the DNS, rendering it an operational internet address.

13.     GoDaddy does not sell or own the domain names that customers register with GoDaddy. Rather, GoDaddy and other registrars merely facilitate the registration of the domain names to their customers (the domain registrants).

14.     Registrants are free to utilize different registrars or transfer a domain they registered with one registrar to a different registrar.

## II.     Domain Connect Protocol Establishes Common Standard for Configuring DNS Records.

15.     To enable certain functions or designs on their websites, domain registrants may turn to third-party software companies that provide various domain services.

16.     For instance, domain registrants might rely on a SaaS company's application to process payments or issue newsletters.

17.     To function, the applications must be integrated with the registrant's domain.

18.     Integration requires updating the domain's DNS records to ensure all the applications are properly mapped to the domain and all the necessary data appears when a domain registrant navigates to the domain.

19.     To provide additional DNS configuration options for domain registrants utilizing third party hosting services or other applications, in 2016, GoDaddy developed Domain Connect. Domain Connect is an open standard that makes it easy for registrants to configure their DNS through a SaaS company's application.

20.     The Domain Connect protocol involves two parties: DNS providers and service providers, or SaaS companies, who provide the services and applications attached to domains.

21.     Prior to Domain Connect, updating domain records was a manual process: a domain registrant would have to log into their account with their domain registrar and update the DNS records for each SaaS company based on the instructions from that company.

22.     For example, a domain registrant would try to configure a service at a service provider by entering their domain name. The service provider then would then identify the DNS provider through a number of techniques, including by conducting DNS queries for the nameservers. Once the service provider mapped the nameserver to a DNS provider, it would typically give the customer instructions for proper configuration of DNS. This, in turn, would present several bits of information that, if the customer is not well versed in the technology, could be difficult to understand.

- 37 -

23.     By contrast, Domain Connect simplified that experience by implementing a standard interaction between all service providers and all DNS providers. This eliminates the need for each connection between a service provider and DNS provider to be customized or require that the user configure DNS settings manually.

24.     At a high level, Domain Connect functions by detecting the domain registrant's DNS provider, and then applying changes to the user's DNS records based on a template that has been previously onboarded with that DNS provider.

25.     GoDaddy published Domain Connect as an International Engineering Task Force (IEFT) informational standard, so any DNS provider or service provider can take advantage of the Domain Connect standard no matter their affiliation with GoDaddy.  GoDaddy published Domain Connect specifications, code, and set-up guides for DNS providers and service providers on the Domain Connect website at http://www.domainconnect.org.

26.     GoDaddy is actively involved with and supports the Domain Connect community, including through a Domain Connect Slack channel.  GoDaddy does so, in part, to assist DNS providers and service providers with integrating Domain Connect.

27.     All this information about Domain Connect remains available free of charge on the Internet.  And because the Domain Connect standard is open source, any DNS provider or service provider may adopt the standard free of charge. In fact, the Domain Connect standard has always been offered for free since its release in September 2016. Domain Connect is not used only by GoDaddy and its registrants. Other domain registrars, including IONOS and CloudFlare, also support the Domain Connect protocol.

III.     **GoDaddy Initially Offers Services Free of Charge to Some Domain Connect Partners, Resulting In Support-Compensation Imbalance.**

28.     In or around 2016, GoDaddy, as a DNS provider, itself adopted the Domain Connect standard for configuration of its customers' DNS records. Dozens of service providers partnered with GoDaddy to similarly adopt Domain Connect for their users with GoDaddy-registered domains.

29.     Domain Connect provides a particular benefit to SaaS companies because it saves them the costs of providing the instructions and support necessary to integrate their software application with a user's website on an individual basis.

30.     The benefit to DNS providers and domain registrars is indirect. To illustrate, enabling Domain Connect requires GoDaddy to create and maintain DNS templates, or a file that describes a set of changes to DNS and domain functionality to enable a specific service; as well as provide ongoing support for a SaaS company using Domain Connect to integrate with other domains. However, it also had the potential to create visibility for the GoDaddy brand.

31.     Accordingly, in or around 2016, GoDaddy began reaching out to SaaS companies and informing them of the opportunity: instead of the labor-intensive and technical work of instructing registrants on integrating with the SaaS application, the SaaS company could save significant costs by incorporating Domain Connect.

32.     Since adopting Domain Connect in September 2016, GoDaddy has charged fees to certain service providers that account for a high volume of templates and configurations to help cover the costs incurred by GoDaddy to support the implementation of Domain Connect for those service providers.  For instance, since September 2016, GoDaddy has maintained contracts with service providers including ███████████████████████ where GoDaddy received monthly or quarterly payments for supporting DNS configuration through Domain Connect. These

- 39 -

6783797

agreements acknowledged the value of GoDaddy's services in both enabling the Domain Connect protocol and the support GoDaddy provided in doing so.

33.     For many service providers, GoDaddy provided these services, including creating requested templates for partners and providing support, free of charge.

34.     To support these partnerships, GoDaddy had to expend resources, including for onboarding templates and managing DNS configurations. GoDaddy did not have a dedicated team to support Domain Connect, so employees with other responsibilities were required to divert their time and resources to handle this work.

35.     For instance, for each template, GoDaddy has to perform at least the following steps: (1) review every template to ensure it aligns with the specification standards and GoDaddy's DNS standards; (2) onboard the template to GoDaddy's DNS systems; (3) test and review the template after deployment to ensure the template is functioning properly and to check for any unexpected consequences of the deployment; (4) generate a unique URL for Domain Connect synchronous flow; and (5) test this flow for success.  GoDaddy must also provide ongoing support to resolve any inquiries or issues raised by each customer or partner.

36.     The work described above is illustrative of the time and resources GoDaddy must divert to permit Entri Connect to configure domains through Domain Connect, and does not fully account for additional support that may be required depending on the circumstances.  This burden is all in addition to the opportunity costs imposed on GoDaddy from having to divert time and resources away from other work.

37.     Moreover, although GoDaddy was receiving payments from certain service providers with higher volumes, service providers with lower volumes still required substantial

support from GoDaddy. And these service providers were receiving this support for free or a small charge.

38.     GoDaddy's original pricing model thus resulted in a significant support-compensation imbalance, where GoDaddy was dedicating a disproportionate amount of support resources to service providers that were providing GoDaddy with little to no compensation.

## IV.     Entri Monetizes GoDaddy's Services Through Aggregator Program, Entri Connect.

39.     In 2021, Entri launched Entri Connect.

40.     Entri Connect is a program that can be used by SaaS companies to automate the process by which users of domains update DNS records.

41.     Entri Connect is sold to SaaS companies and only accessed by end consumers who register domains within the SaaS application. Domain registrars (e.g., GoDaddy) and registrants (e.g., GoDaddy's customers) do not buy Entri Connect.

42.     When Entri initially released Entri Connect, GoDaddy's users would log into Entri Connect from the relevant SaaS application and authorize the program to automatically update DNS records.

43.     At first, Entri Connect accomplished this without use of the Domain Connect protocol.

44.     Beginning in April 2022, after conversations with GoDaddy representatives, Entri agreed that Entri Connect would use the Domain Connect protocol to configure DNS records for GoDaddy domains.

45.     On April 8, 2022, GoDaddy and Entri entered the one-year "Domain Connect Integration and License Agreement" (the "Agreement").

46.     The Agreement required that Entri pay GoDaddy ████████████████
████████████████████████████████████████████████████████
██████ .

47.     GoDaddy expected that the rate at which Entri would request new templates would resemble that of GoDaddy's other Domain Connect partners. They did not. Instead, Entri demanded that GoDaddy onboard new templates at a rate far higher than GoDaddy's other partners.

48.     A typical Domain Connect partner asks for just one template that applies to the particular software application that partner offers to its customers. A SaaS company, for example, may request one template that it then uses with the Domain Connect protocol to integrate with multiple other domains.

49.     By contrast, starting in April 2022, Entri requested about 50 templates.

50.     Because GoDaddy did not have a dedicated team to support Domain Connect, employees with other responsibilities were required to divert their time and resources to handle this work, all without GoDaddy receiving any compensation.

51.     While GoDaddy's original pricing model resulted in a support-compensation imbalance with many of its service providers, Entri was the most extreme example of this imbalance.

52.     Not only did Entri demand templates and support in multiples more than other Domain Connect partners, but all the while Entri was monetizing the services that GoDaddy was providing, free of charge, to Entri.

53.     In other words, Entri abused its relationship with GoDaddy by profiting off GoDaddy's free support: the templates that GoDaddy onboarded for Entri enabled Entri to offer

its own DNS configuration service, Entri Connect, for use in connection with domains registered with GoDaddy, and Entri charged service providers for such use.  Put differently, Entri off-loaded onto GoDaddy many of the costs to develop capabilities of Entri's for-profit product—Entri Connect—while providing almost nothing to GoDaddy in return.

54.     This compensation imbalance harmed GoDaddy financially and operationally.

**V.     Entri Breaches the Parties' Contract.**

55.     One of the clearest examples of Entri's abuse of the parties' relationship (and thus harm to GoDaddy) was Entri's failure to refer potential customers to GoDaddy.

56.     Per the 2022 Agreement, Entri was required to ████████████████████ ████████████████████████████████████████████████████. For example, section 4 of the 2022 Agreement required Entri to ██████████████ ████████████████████████████████████████████." *See* 2022 Agreement § 56, attached hereto as **<u>Exhibit 1</u>**.

57.     Moreover, the Agreement contemplated that Entri would provide users "the opportunity to purchase a GoDaddy Domain or other products through Domain Connect." Ex. 1 § 6.

58.     Although the Agreement did not require Entri to exclusively refer potential customers to GoDaddy, the Parties' expectation was that the inclusion of these terms meant that Entri would send referrals to GoDaddy. In other words, referrals for domain registrants were part of the consideration for providing access to Domain Connect, creation of templates, and other services required to support Entri Connect.

59.     Near the end of 2022, GoDaddy realized that Entri was not sending GoDaddy new registrations.

60.     On information and belief, Entri instead was referring thousands of new domain registration customers—up to 5,000 registrations per month—to IONOS, one of GoDaddy's competitors (rather than to GoDaddy), in exchange for referral fees.

61.     This misconduct not only enabled Entri to reap referral fees from that competitor, but deprived GoDaddy of additional revenue it could have earned from the registration of new domain names or the purchase of other products and services to help offset the substantial costs GoDaddy was incurring to support Entri's use of Domain Connect.

## VI.     GoDaddy Attempts to Renegotiate Partnership with Entri.

62.     Once the License Agreement expired on April 7, 2023, GoDaddy and Entri engaged in further discussions regarding a continued business relationship and licensing agreement.

63.     Despite Entri's flagrant abuse of the parties' relationship and bad faith failure to comply with the obligations of the Agreement, GoDaddy was open to renegotiating an agreement with Entri, provided the new agreement contained fair terms for GoDaddy.

64.     For example, it had become clear that permitting users with GoDaddy-registered domains to rely on Entri Connect for automated DNS configuration required significant resources and labor expended by GoDaddy, including, but not limited to, providing support to Entri, creating and onboarding templates, and responding to the volume of requests directed at GoDaddy's API, as alleged above. Accordingly, GoDaddy's proposals included terms that would fairly compensate GoDaddy for these services.

65.     During these negotiations, Entri aggressively pushed GoDaddy for various concessions regarding exclusivity. In September 2023, Entri's CEO, Abe Storey, repeatedly requested that GoDaddy agree to a three-year agreement under which GoDaddy would make Entri its exclusive aggregator and would agree to highlight Entri as the preferred option in working with GoDaddy for all template updates.

66.     Entri also pushed for GoDaddy to adopt the so-called "Universal Template," which would require an extensive re-write of GoDaddy's product template and extensive testing due to the widespread effect of the changes.

67.     Entri's offer was untenable, but GoDaddy nonetheless continued good-faith negotiations and even circulated a proposed agreement on October 24, 2023, without the aforementioned requirements.

68.     Entri balked at GoDaddy's offer, and the parties' negotiations subsequently fell apart.

69.     Given Entri's unreasonable demands, including their technical complexity, GoDaddy opted against using Entri for DNS configuration.

70.     On January 11, 2024, GoDaddy sent Entri a termination letter making clear that the Domain Connect Licensing Agreement expired and Entri's access to Domain Connect was terminated.

71.     GoDaddy then forwent use of Entri Connect and instead chose, as it had done previously, to support direct integration through its in-house Domain Connect product, described in section VII, infra.

72.     GoDaddy took several steps to implement this change, such as informing SaaS companies to use Domain Connect for DNS integration and updating its "GoDaddy API Terms of Use Agreement" to prohibit Entri Connect from using GoDaddy's Application Programming Interfaces ("API").

**VII.    GoDaddy Launches Paid Domain Connect.**

73.     In or around February 2024, GoDaddy launched Domain Connect, a web-based flow and API built by GoDaddy based on the Domain Connect open standard protocol.

74.     Although GoDaddy's Domain Connect and the Domain Connect protocol share the same name, they are not the same. To be clear, GoDaddy does not charge for use of the Domain Connect protocol, which remains an open-source standard that is available online. Rather, GoDaddy licenses Domain Connect, which provides automatic DNS configuration via the Domain Connect standard.

75.     Unlike Entri Connect, GoDaddy's Domain Connect is not an aggregator service.

76.     Instead, GoDaddy's Domain Connect involves services GoDaddy provides to support Domain Connect. For example, upon prompting from Domain Connect, GoDaddy sets appropriate DNS records to properly connect a user's domain name with the service provider's product. The service provider provides GoDaddy with the record types and values by creating a DNS template and provides the template to GoDaddy for onboarding.

**VIII.   Entri Violates GoDaddy's API Terms of Use.**

77.     Despite disconnecting Entri from GoDaddy's Domain Connect product, GoDaddy subsequently learned that Entri had managed to work around this disconnection to continue offering GoDaddy's DNS configuration to customers.

78.     In or around March 1, 2024, GoDaddy updated its API Terms of Use ("TOU") to address Entri's abuse of its API. The API TOU, revised as of March 1, 2024, is attached hereto as **Exhibit 2**.

79.     By using GoDaddy's API, users agree to be bound by its Terms of Use. *See* Ex. 2.

80.     The API TOU explicitly prohibited users from "register[ing], transfer[ing], renew[ing], or modify[ing] domains or products that are not under the user's direct control." Ex. 2.

81.     The API Terms of Use further provide:

> Users or other entities shall not charge any fees, require any payment or compensation, or otherwise offer a service behind a paywall that uses any part of the GoDaddy API or offer any services or products that use or rely on the GoDaddy API, including any services or products offered to users by third parties.

Ex. 2.

82.    Entri's improper and unauthorized use of GoDaddy's API imposed, and continues to impose, financial harm and security risks.

83.    Despite having no license or authorization to access GoDaddy's API, Entri Connect has made and, on information and belief, continues to make numerous API requests directed at GoDaddy's systems.

84.    These requests impose significant data processing and server costs on GoDaddy, yet GoDaddy receives no compensation to offset these costs.

85.    Entri's unauthorized use of GoDaddy's API also creates security vulnerabilities by allowing Entri Connect to access and configure domains without GoDaddy's oversight.

86.    Moreover, Entri solicited and used GoDaddy customer credentials for the purpose of, among other things, logging those credentials with the GoDaddy system to create new API keys in furtherance of Entri's commercial activities.

## IX.   Entri Makes Unauthorized Use of GoDaddy's Name and Logo.

87.    Entri repeatedly used and continues to use GoDaddy's name and logo on the Entri Connect user log-in portal without license or authorization from GoDaddy.

88.    Entri also designed its user log-in portal in a way that mimics GoDaddy's own SSO log-in credential page.

89.    Even after removing GoDaddy's actual logo from Entri's user log-in portal, Entri continued to reference GoDaddy's name.

90.     This unauthorized use created a substantial likelihood that GoDaddy customers and others would be confused or misled into believing that Entri is affiliated with GoDaddy or is otherwise authorized to display GoDaddy's intellectual property.

91.     Any such confusion is particularly injurious because Entri's unauthorized use of GoDaddy's intellectual property causes GoDaddy's customers to wrongly believe that their GoDaddy log-in credentials—which they provide to Entri through Entri Connect—are protected by GoDaddy's security infrastructure when logging in through Entri Connect's portal.

92.     But that is not the case.  GoDaddy has no way to ensure that the credentials and other customer information are adequately safeguarded when they are provided to Entri via Entri Connect's portal.  GoDaddy thus faces an increased risk that its customers will fault GoDaddy if the information they provided to Entri is compromised by a security incident.

## CAUSES OF ACTION

### FIRST COUNTERCLAIM

**Breach of the Covenant of Good Faith and Fair Dealing**

93.     GoDaddy realleges and hereby incorporates by reference all preceding paragraphs as though set fully forth herein.

94.     On April 8, 2022, GoDaddy and Entri entered the one-year "Domain Connect Integration and License Agreement" (the "Agreement").

95.     The Agreement contained terms for promotion and integration that required Entri ██████████████████████████████████████████████████████████  ██████  The Agreement also contained terms contemplating that ████████████████████  ██████████████████████████████████████████████████████████  ████████████████

- 48 -

96.     The Parties understood that including this term meant that Entri would refer its users to GoDaddy for domain registration.

97.     Despite this, Entri did not refer users to GoDaddy.

98.     Instead, Entri referred users to IONOS in exchange for referral fees.

99.     Meanwhile, Entri abused GoDaddy's obligations under the agreement by requesting support and templates, at great cost to GoDaddy in terms of support and resources, and monetized off that labor.

100.    Entri's conduct constitutes a breach of the implied covenant of good faith and fair dealing, and substantially harmed GoDaddy by depriving it of additional registrations and associated fees while GoDaddy was incurring significant costs to support integration of Entri Connect with the Domain Connect protocol.

101.    Entri was also unjustly enriched by receiving referral fees from IONOS when Entri should have been referring those users to GoDaddy.

**SECOND COUNTERCLAIM**

**Breach of GoDaddy's API Terms of Use**

102.    GoDaddy realleges and hereby incorporates by reference all preceding paragraphs as though set fully forth herein.

103.    In using GoDaddy's API, including by explicit agreement between the parties from April 2022-2023, Entri agreed to GoDaddy's API Terms of Use.

104.    The API TOU prohibits users or entities from charging fees, requiring payment or compensation, or otherwise offering services behind a paywall that uses any part of the GoDaddy API.

- 49 -

105.    In violation of this term, Entri used GoDaddy's API to offer its paid product and service, Entri Connect, to third parties.

106.    The API TOU further prohibits users from accessing, modifying, or deleting any data tied to accounts not under their direct control.

107.    In violation of this term, Entri solicited user information to access GoDaddy's API to modify data associated with those user accounts.

108.    Entri's violation of these terms of the API TOU has resulted in damage to GoDaddy. These damages include the imposition of significant data processing and server costs on GoDaddy. Moreover, Entri's unauthorized use of GoDaddy's API also creates security vulnerabilities by allowing Entri Connect to access and configure domains without GoDaddy's oversight.

### THIRD COUNTERCLAIM

### Violation of the Computer Fraud Abuse and Act, 18 U.S.C. § 1030

109.    GoDaddy realleges and herby incorporates by reference all preceding paragraphs as though set fully forth herein.

110.    After GoDaddy terminated the license for Entri to access GoDaddy's API, Entri continued to access GoDaddy's API to continue providing GoDaddy configuration services to third-party application providers. Entri's continued use of GoDaddy's API exceeded authorization of permitted use.

111.    Entri also accessed GoDaddy's systems without authorization by soliciting and using GoDaddy customer credentials, against API Terms of Use, for the purpose of, among other things, logging those credentials with the GoDaddy system to create new API keys in furtherance of Entri's commercial activities.

- 50 -

112.    In so doing, Entri improperly procured information and altered the configuration settings of domains registered with GoDaddy—domains that it was accessing without authorization.

113.    Entri's repeated unauthorized access and use of GoDaddy's API caused GoDaddy to incur damages of at least $5,000 in investigating and responding to the consequences of this unauthorized access, which posed security and operational threats to GoDaddy.

<b>FOURTH COUNTERCLAIM</b>

<b>Violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125</b>

114.    GoDaddy realleges and hereby incorporates by reference all preceding paragraphs as though set fully forth herein.

115.    After GoDaddy terminated the license for Entri to access GoDaddy's API, Entri continued to use GoDaddy's registered mark on its website and log-in portal.

116.    Specifically, Entri used the GoDaddy logo and other branding to represent to its GoDaddy registrants that its services were supported by GoDaddy. This included utilizing a log-in portal that mimicked GoDaddy's own SSO log-in credential page.

117.    In so doing, Entri improperly represented itself as a GoDaddy partner to its customers. This further represented that Entri and GoDaddy have a business relationship and that users of Entri Connect may safely and securely provide their GoDaddy log-in credentials.

118.    Entri's actions were intentionally calculated to deceive and confuse consumers by causing them to believe that Entri was affiliated, connected, or associated with GoDaddy; or that GoDaddy sponsored or approved of Entri Connect or Entri's commercial activities.

<b><u>JURY DEMAND</u></b>

GoDaddy demands a jury trial on all claims so triable.

- 51 -

6783797

## PRAYER FOR RELIEF

WHEREFORE, GoDaddy respectfully requests that the Court grant it the following relief:

A.      Compensatory, consequential, and exemplary damages on all claims so permitted;

B.      Prejudgment interest;

C.      Permanent injunctive relief to enjoin Entri's ongoing breaches of GoDaddy's API

TOU, unauthorized access to GoDaddy's systems, and unlawful use of

GoDaddy's intellectual property;

D.      Attorneys' fees and costs;

E.      Any other equitable and injunctive relief necessary to prevent and remedy the

harms alleged herein; and

F.      Such other and further relief as the Court deems just and proper.

Dated:  October 24, 2024                          Respectfully submitted,

                                                 HUESTON HENNIGAN LLP


                                  By:   */s/ Douglas J. Dixon*
                                        Douglas J. Dixon
                                        Andrew K. Walsh
                                        Justin M. Greer
                                        Melanie J. Hess
                                        Erik C. Savitt

                                        *Counsel for Defendant GoDaddy.com, LLC*


                                   By:  */s/Chad E. Kurtz*
                                        Chad E. Kurtz (Va. Bar No. 88863)
                                        COZEN O'CONNOR
                                        2001 M Street NW, Suite 500
                                        Washington, D.C. 20036

6783797

Tel.: (202) 463-2521
Fax: (202) 640-5939
ckurtz@cozen.com

*Counsel for Defendant GoDaddy.com, LLC*

6783797

## **CERTIFICATE OF SERVICE**

I certify that on the 24th day of October 2024, I electronically filed the foregoing the Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to all counsel of record in this case.

By:   /s/ *Chad E. Kurtz*
        Chad E. Kurtz

6783797