UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ENTRI, LLC,

    Plaintiff,

vs.

GODADDY.COM, LLC,

    Defendant.

Case No. 1:24-cv-00569-AJT-WEF

**DEFENDANT GODADDY.COM, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO PREVENT THE SEARCH AND PRODUCTION OF SLACK MESSAGES FROM ADDITIONAL CUSTODIANS**

6810983

I.  **INTRODUCTION**

After the substantial completion deadline had passed, Entri, LLC ("Entri") sought to almost *double* the number of GoDaddy.com, LLC's ("GoDaddy") custodians to include several executives with little, and certainly no unique, knowledge of the facts at issue. Nonetheless, as a show of good faith and to ensure the thoroughness of its document production, GoDaddy searched the emails of these additional custodians. This search uncovered just 96 responsive documents and confirmed that these additional custodians are largely irrelevant to the key decisions and issues in this case. Pursuant to the Court's November 15, 2024 order and Rule 26(c) of the Federal Rules of Civil Procedure, GoDaddy thus seeks a protective order to prevent another futile and burdensome search of Slack messages for these six additional custodians.

The Stipulated ESI Order required the parties to "exchange proposed lists of custodians to be searched for responsive ESI," and to "meet and confer . . . to finalize custodian lists." (Dkt. 63 at 8.)  Pursuant to the ESI Order, GoDaddy proposed a list of seven custodians with a broad array of responsibilities pertaining to GoDaddy's company-wide operations, domains business unit, strategic partnerships, business development, finances, and Domain Connect offerings; security risks and incidents; and direct interactions with Entri. These seven custodians were:

- Roger Chen, *Chief Operating Officer*
- Paul Nicks, *Vice President, Domain Investors*
- Bob Mountain, *Vice President, Strategic Partnerships*
- Phontip Palitwanon, *Vice President, Finance*
- Carissa Haydon, *Director, Domains Business Development*
- Robert Philip, *Sr. Manager, Business Development*
- Nicholas Fox, *Principal Incident Responder*

On August 30, 2024, the parties met and conferred regarding their respective custodian lists. Entri approved GoDaddy's custodian list without any modifications.

On October 21, 2024, after the substantial completion deadline had passed, Entri requested

that GoDaddy produce documents from six additional custodians, which would bring the total to 13 custodians. *See* **Exhibit A**. These additional custodians include GoDaddy's most senior executives—the CEO and CTO—and other high-level executives with minimal involvement in the issues and whose relevance overlaps with GoDaddy's original custodians:

- **Aman Bhutani**, *CEO*
- **Charles Beadnall**, *CTO*
- **Stacie Johnson**, *Vice President for Corporate and Business Development*
- **Laura Feller**, *Director of Accounting, Global Revenue*
- **Trip Briscoe**, *Head of Domains GTM*
- **Brian Dickson**, *Principal Software Development Engineer*

("Additional Custodians") Ex. A. To justify its request, Entri pointed to a handful of emails that Entri claimed showed some connection to Entri, Entri Connect, or Domain Connect. *See id.* at 2-4. But those emails show mere visibility of the issues or one-off contributions at best. *See, e.g.*, *id.* (for Trip Briscoe, relying on a single email). Nonetheless, on October 29, 2024, GoDaddy agreed to search the Additional Custodians' custodial records.

GoDaddy's review of those records confirmed the minimal relevance of the Additional Custodians. Of the six custodians, just 96 responsive documents were uncovered for production, and none showed that these custodians had any unique or significant relevance to the issues. Slack documents are unlikely to reveal additional relevance, but their production—which will take weeks to process and review—will impose a significant burden on GoDaddy that far outweighs any relevance. GoDaddy thus seeks a protective order to prevent the additional search of these custodians' Slack messages.

## II. PRODUCTION OF SLACK MESSAGES FROM THE ADDITIONAL CUSTODIANS IS UNDULY BURDENSOME.

### A. The Legal Standard

Under Rule 26 of the Federal Rules of Civil Procedure, the Court should issue a protective order limiting "the frequency or extent of discovery" if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *See Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (quoting Fed. R. Civ. P. 26(b)(2)(C)). The Court may limit discovery from additional custodians or sources of ESI when the burden of those additional searches outweighs the likelihood of discovering responsive documents. *See Harrington Enterprises, Inc. v. Safety-Kleen Sys., Inc.*, No. 13-00167-CV-W-BP, 2014 WL 12611318, at *3 (W.D. Mo. July 11, 2014) (denying discovery of proposed custodians because they were "a party to only two emails," were "not meaningfully involved" in the core events of the case, and the requested ESI was "not readily accessible" and would take "substantial time, effort, and cost"); *see also* Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.").

### B. The Additional Custodians Have Minimal Relevance.

The minimal relevance of the Additional Custodians has been confirmed through discovery. Entri justified their request for ESI from the Additional Custodians based on their relevance to three topics: Entri, Entri Connect, and Domain Connect. But GoDaddy has confirmed

6810983

that these custodians' involvement with Entri, Entri Connect, Domain Connect, or any of the issues in this case is minimal. Slack messages are unlikely to yield a different result.

If the Additional Custodians had relevant documents, they would have been captured by Entri's broad Requests for Production ("RFP"). Over the course of discovery, Entri has served RFPs seeking *all* documents related to many issues in this case, including:

- **RFP 5:** The Domain Connect protocol, including its rate of adoption among third parties;
- **RFP 7:** Entri, any of Entri's products, or any of Entri's employees;
- **RFP 9:** Your strategy for DNS configuration and/or Domain Connect, including any market analysis (whether formal or informal), forecasts, projections, communications with potential users, and marketing plans;
- **RFP 12:** Your decision to prohibit the use of Entri Connect by end-users with GoDaddy-registered domains;
- **RFP 18:** The deletion of Domain Connect templates You previously onboarded from Entri;
- **RFP 46:** The impact or outcomes resulting from GoDaddy's efforts to prevent companies from using Entri Connect; and
- **RFP 51:** Differences, distinctions, or variations in legal or regulatory barriers, challenges, or hurdles for GoDaddy's domain registration and renewal services, aftermarket domain services, and DNS configuration services offered via Domain Connect in international markets.

*See* **Exhibits B and C**. GoDaddy has now produced documents responsive to these RFPs from twelve custodians. If the Additional Custodians had any involvement with the facts at issue, it would have been shown in the documents produced to date.

The documents identified by Entri from GoDaddy's production from the original custodians do not show that the Additional Custodians had substantial involvement in the case:

- **Aman Bhutani**, *CEO*: Mr. Bhutani acknowledged an email from Roger Chen about a proposed deal with Entri and a customer complaint about Domain Connect;
- **Charles Beadnall**, *CTO*: Mr. Beadnall was included on an email and meeting invite about Entri's unauthorized access of GoDaddy's API;

- **Stacie Johnson**, *VP for Corporate and Business Development*: Ms. Johnson commented on a potential partnership with Entri in a single email thread and was invited to a meeting about Entri;

- **Laura Feller**, *Director of Accounting, Global Revenue*: Ms. Feller received an email about charging for API integration and sent a Zoom meeting invite about Entri and Domain Connect;

- **Trip Briscoe**, *Head of Domains GTM*: Mr. Briscoe received a list of Entri's customers for social monitoring; and

- **Brian Dickson**, *Principal Software Development Engineer*: Mr. Dickson was included on two email chains, invited to a meeting, and referred by Robert Philip as the person who owns technical aspects of Domain Connect.

Ex. A at 2-4. Receipt of one or two emails on potentially relevant topics does not show that these custodians, which include GoDaddy's CEO and CTO, possess uniquely relevant information or were involved in decision-making regarding Entri or Domain Connect *See Harris v. Union Pacific Railroad Co.*, 2018 WL 2729131, at *4 (D. Neb. June 6, 2018) (denying motion to compel an email search of a CEO that was "not directly involved in the creation, implementation, and revision of the" program at issue and did not make "any decisions regarding the [program]"). Moreover, to put these stray emails in context, GoDaddy has produced well over 7,000 documents from its original seven custodians *just* related to Entri, Entri Connect, and Domain Connect, and more than 18,000 documents overall to date. The few emails received by these Additional Custodians are drops in the bucket, and do not justify the burdensome search of Slack messages, a task that has already proven cumbersome and expensive in this litigation.

    A thorough search of the Additional Custodians' own emails also failed to reveal a relevant connection between those individuals and the issues in this case. Although Entri had limited support for its demand for GoDaddy to search for additional documents from these individuals,

GoDaddy collected, reviewed, and produced the responsive custodial documents for each of them. Not surprisingly, the Additional Custodians possessed just 96 documents for production.[1]

Moreover, the 96 documents confirmed that the Additional Custodians had little or no involvement with the issues central to Entri's claims:

- **Aman Bhutani,** *CEO*: There are 14 responsive, non-privileged documents from Mr. Bhutani's emails. There are *zero documents about Entri*, and ten documents mentioning Domain Connect in the context of DNS issues unrelated to this matter;

- **Charles Beadnall**, *CTO*: There are 40 responsive, non-privileged documents from Mr. Beadnall's emails. There are *zero documents about Entri*. There are 30 documents mentioning Domain Connect, but 26 of these documents occurred in 2020 before GoDaddy and Entri first communicated. The only document created after GoDaddy and Entri began their relationship involves Mr. Beadnall routing a Domain Connect question from Arnold Blinn to Robert Philip, one of GoDaddy's original custodians, in May 2022;

- **Stacie Johnson**, *Vice President of Corporate and Business Development*: There are 12 responsive, non-privileged documents from Ms. Johnson's emails. Regarding Entri, Ms. Johnson's only relevant communication is her four-line email about potential terms for a partnership. The six documents that mention Domain Connect are of little importance to the issues in this case;

- **Laura Feller**, *Direct of Accounting, Global Revenue*: There are 28 responsive, non-privileged documents from Ms. Feller's emails. There are fifteen documents mentioning Entri or Domain Connect, all of which relate to accounting matters not at issue in this case;

- **Trip Briscoe**, *Head of Domains GTM*: There is just a single, responsive, non-privileged document from Mr. Briscoe's emails that relates to a technical matter for Domain Connect that is not at issue;

- **Brian Dickson**, *Principal Software Development Engineer*: There are no responsive custodial documents from Mr. Dickson.[2]

---

[1] While GoDaddy produced 128 documents from these five custodians, only 96 of those documents were responsive. The remaining 32 non-responsive documents were produced to preserve the parent-child document relationship.

[2] Mr. Dickson's custodial documents, including emails, locally saved files, and hard copy documents, were not retained when his employment ended months before this litigation commenced. Mr. Dickson's Slack data remains.

These custodians' Slack messages are unlikely to be any more relevant to this case. Even if the Additional Custodians had some relevant involvement, their Slack messages are unlikely to yield information not already encompassed by the emails and Slack messages produced to date. Each Additional Custodian is in a business unit similar to or with high-level oversight over the original custodians' business units. Thus, the only connection the Additional Custodians seem to have in this case is their oversight of or interaction with GoDaddy's original custodians. *See Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (denying motion to compel because opposing party "already included custodians from certain business units" and the movant failed to "demonstrate that the additional requested custodians would provide *unique* relevant information not already obtained"). The information contained in the Additional Custodians' Slacks would thus be duplicative of GoDaddy's productions.

At bottom, GoDaddy has already searched the Original and Additional Custodians' emails, and the Original Custodians' Slack messages. These searches have failed to reveal any appreciable connection between the Additional Custodians and the issues in this case. There is no indication that the Additional Custodians' Slack messages will reveal this connection.

**C.     Searching the Additional Custodians' Slack Messages is Unduly Burdensome.**

The burden and expense of conducting a search of the Additional Custodians' Slack messages is substantial, and far outweighs the minimal relevance of these Slack messages.

The collection and production of Slack messages will be a time intensive and burdensome process. GoDaddy cannot run search terms to isolate and deduplicate potentially responsive documents until after it has collected and processed *all* data associated with every Slack channel that each custodian has *ever* contributed to. This means that, for each custodian, GoDaddy will likely have to process hundreds of gigabytes ("GB") of data. The total time required to collect,

process, review, and produce the relevant data for production is thus estimated to take at least **5 to 6 weeks**.  *See* Declaration of Eric P. Mandel ("Mandel Decl.") ¶ 10.  GoDaddy will also need to incur **$16,000 to $20,000** in costs just to process and host this likely nonresponsive data, *see id.* ¶ 11, not to mention the costs incurred by GoDaddy's in-house legal and IT resources involved with exporting the data, and legal fees from GoDaddy's outside counsel to review the Slack messages.

Courts recognize the burden associated with just the act of processing Slack.  In *Milbeck v. TrueCar, Inc.*, No. CV1802612SVWAGRX, 2019 WL 4570017, at *2 (C.D. Cal. May 2, 2019), the Court denied a motion to compel after the opposing party provided a declaration from its eDiscovery vendor explaining that there "is no way to isolate any specific information, such as particular channels or users and limit the collection to only that data" because the "entire Slack data must be processed before any information can be extracted," and "the initial conversion process could take three to four weeks, followed by another two or more weeks of processing time to address any conversion anomalies."  *Id.*  In short, the "[c]onversion and processing of the Slack data – which is necessary before any information can be extracted or any particular channel identified – will likely take at least six weeks and perhaps up to eight weeks."  *Id.*

Like *Milbeck*, if GoDaddy is ordered to produce slack messages, it will be faced with a burdensome multi-week effort to process hundreds of gigabytes of data, all before search terms can even be applied and a single document can be presented for review by GoDaddy's attorneys.  To illustrate the burdensome process GoDaddy would be required to undertake, GoDaddy's eDiscovery vendor, KLD, described the process in a declaration:

*Step 1 – Collection and Conversion.*  Collecting Slack data is the first stage in the process. GoDaddy must first export all Slack data associated with each of the Additional Custodians,

including data associated with one-on-one chats, group chats, private channels, and public channels that each custodian participates in or subscribes to. *Id.* ¶ 3. Data is exported in .JSON files, which contain the necessary information to reconstitute each part of a message thread except for attachments. *Id.* GoDaddy then provides the .JSON files to KLD via a file-sharing system. Attachments must be separately collected and transferred to KLD. *Id.* Exporting the .JSON files from Slack usually takes GoDaddy's IT personnel at least **one day** to complete.

At the collection stage, there is no option to run search terms, deduplicate, or perform any other functions to narrow the scope of data other than by date range. *Id.* ¶ 4. The data collected from each custodian is thus typically very large because it includes the entirety of the Slack private and public channels to which each custodian participates in or subscribes to. *Id.* Although KLD is unable to determine the precise size of Slack data at the collection stage, the total data to be collected from any additional GoDaddy custodian is estimated to be in the range of 100 to 250 GB. *Id.* This estimate is based on the data sizes associated with GoDaddy's original seven custodians and KLD's experience working with Slack data. *Id.* Specifically, the total data collected from the original seven custodians was **1,163 GB** (1.14 terabytes), with the average volume of Slack data for each custodian equal to 166.15 GB.[3] *Id.*

After all Slack data is collected, KLD then converts the data for each custodian into groupings of data, including direct messages, group messages, and public and private channels. *Id.* ¶ 5. KLD then performs various quality control actions to ensure the data is in a proper format.[4]

---

[3] The original seven custodians had the following Slack data size: Robert Philip, 236.44 GB; Roger Chen, 207.20 GB; Paul Nicks, 166.78 GB; Carissa Haydon, 151.83 GB; Phontip Palitwanon, 149.87 GB; Nicholas Fox, 133.31 GB; and Bob Mountain, 117.60 GB. *Id.*

[4] The quality control process involves several detailed steps to ensure data integrity and accuracy, including: (1) verifying the data is not corrupted; (2) checking the data layout; (3) confirming all necessary information associated with the data is tracked; (4) examining various Slack channel
(Continued...)

*Id.* Together, the collection and conversion stages for the Additional Custodians will likely take at least **3-5 days** to complete. *Id.* at ¶ 6.

*Step 2 – Processing.* The collected and converted data must then be processed into a reviewable format, which includes indexing the data to be searchable. *Id.* ¶ 7. Processing time is primarily "machine" time, i.e., the run time required for the relevant programs to perform their functions. *Id.* Processing time is directly related to the size of the Slack data: the more data, the longer the processing time. *Id.* Moreover, Slack processing may encounter additional delays if there is an abnormally high number of messages, large recipient counts for messages, or processing speed slows as the data ingested into the database grows. *Id.* Based on KLD's extensive experience with Slack, the data size associated with GoDaddy's original seven custodians, and the optimistic assumption that no additional delays will occur, the processing time for the Additional Custodians is estimated to be approximately **3 to 4 weeks**. *Id.*

*Step 3 – Search and Promotion.* Only after the Slack data is processed and indexed can KLD deduplicate the data and apply search terms. KLD then creates RSMF files based on search term hits, which are groupings of messages in 24-hour periods around a hit, and promotes the RSMF files for review in the relevant workspace. The search and promotion stage will likely take an additional **1-2 days**. *Id.* ¶ 8.

*Step 4 – Review and Production.* GoDaddy's attorneys will have to review the Slack messages for responsiveness, privilege, and confidentiality. While GoDaddy does not anticipate many search term hits given the Additional Custodians' tangential relationship to the issues in this

---

outputs to ensure they display properly, including testing attachments to ensure they were downloaded correctly; and (5) comparing folder sizes with the data documented in the tracker to verify accuracy. *See id.*

- 10 -

litigation, document review is nonetheless a time-consuming task. The vendor will then have to process any production, including by applying confidentiality and Bates stampings to responsive documents. *Id.* ¶ 9. Processing time for a production is typically one day. *Id.* Together, review and production of Slack messages will likely take at least **2 days**.

*   *   *   *   *

The collection and processing of the entire Slack data associated with each of the Additional Custodians will take approximately 5 to 6 weeks and impose thousands of dollars in vendor and hosting costs. GoDaddy will also have to incur legal fees for the review of likely non-responsive documents. Compared to the small probability of discovering responsive messages, conducting a Slack search is unduly burdensome.

### III.  CONCLUSION

For the reasons explained, GoDaddy respectfully requests that the Court grant GoDaddy's motion for a protective order to prevent the search and production of Slack data for the Additional Custodians requested by Entri.

Dated:  November 20, 2024                     Respectfully submitted,

/s/   /s/ *Douglas J. Dixon*
      Douglas J. Dixon (pro hac vice)
      Andrew K. Walsh (pro hac vice)
      Justin M. Greer (pro hac vice)
      Erik C. Savitt (pro hac vice)
      Hueston Hennigan LLP
      620 Newport Center Dr., Suite 1300
      Newport Beach, CA 92660
      Phone: (949) 229-8640
      Fax: (888) 866-4825
      ddixon@hueston.com

- 12 -

       /s/   /s/ *Chad E. Kurtz*
                Chad E. Kurtz
                VA Bar No. 88863
                Cozen O'Connor
                2001 M St. NW Suite 500
                Washington, D.C. 20036
                Tel: (202) 463-2521
                Fax: (202) 640-5939
                ckurtz@cozen.com

                *Attorneys for Defendant GoDaddy.com, LLC*

- 13 -

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2024, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

/s/ *Chad E. Kurtz*
Chad E. Kurtz
*Attorney for Defendant GoDaddy.com, LLC*

6810983